[No. 36909.  Department One.  September 26, 1963.]

DENNY NIXON et al., Appellants, v. BOBBY COHN et al., Defendants, FRANK HRUBETZ & Co., INC., Respondent.*

*Reported in 385 P. (2d) 305.

---

*Sullivan, Redman & Winsor,* by *John J. Sullivan,* for appellants.

*Elvidge, Watt, Veblen & Tewell,* by *Duane Tewell* and *Thomas A. St. Pierre,* for respondent.

*Skeel, McKelvy, Henke, Evenson & Uhlmann,* amicus curiae.

WHITFIELD, J.[†]—This is an action for damages for personal injuries sustained by the appellants, Helen Nixon and the child, Pamela Nixon, (hereinafter referred to as the plaintiffs), when they were hurled out of their seats while riding on the "Meteor," a giant amusement machine, at the Century 21 Exposition in Seattle, on May 19, 1962. Suit was instituted in the Superior Court of King County against the defendants Cohn and others (hereinafter referred to as Cohn), the owners and operators of the machine, against the defendants Gayway 21 Rides, Inc., Gayway 21 Leasing Corporation, and Century 21 Exposition, Inc., as parties who had the right of control over the operation of the machine, and against respondent Frank Hrubetz & Co., Inc., (hereinafter referred to as the respondent), who manufactured the machine.

[†]Judge Whitfield is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

The amended complaint alleged, *inter alia,* that the machine was inherently dangerous and that the respondent was negligent and guilty of breach of warranty in the design, manufacture, and assembly of the machine.

Service was effected on all of the defendants, except the respondent, by personal service, within King County, Washington, and on respondent by personal delivery of the summons and complaint on Frank Hrubetz, president of the corporation, May 31, 1962, at Salem, Oregon, where respondent operates its manufacturing plant. Respondent could not be served with process within the State of Washington.

The respondent filed a special appearance and moved to quash service of summons and to dismiss the action against it, on the grounds of lack of jurisdiction of the courts of the State of Washington over the respondent corporation. The motion was supported by an affidavit of Frank Hrubetz. The appellants filed affidavits by John J. Sullivan, Bobby Cohn and Jack R. Morningstar in opposition to respondent's motion.

The affidavits and the pleadings show the facts relative to the matter at issue to be:

The respondent is an Oregon corporation engaged in the manufacture of amusement rides at Salem, Oregon. Shortly before the opening of the Century 21 Exposition in Seattle, respondent manufactured and sold the amusement machine to the defendant, Cohn. This machine consisted of three large turntables designed to rotate very rapidly and could carry more than 50 passengers when fully loaded.

The respondent knew that the machine was to be used at the exposition and installed lighting fixtures designed especially for use on the machine at the fair. The machine was mounted on a trailer owned by Cohn and was delivered to Cohn at the respondent's plant in Oregon. Before the accident, the president of the respondent company personally went to Seattle, visited the machine on the fair grounds, and discussed the lighting equipment on the machine with Cohn's manager. The respondent was also avail-

able to service and repair the machine at any time. The machine was not sold for cash, and respondent retained a property interest in the machine after it was installed on the fair grounds. The dates of the contract payments to be made during the year 1962 corresponded to the months in which the machine would be in operation and earning income at the fair. Prior to the accident in May, 1962, the respondent transferred its vendor's interest in the machine to another party.

On May 19, 1962, three passengers were hurled out of the machine while it was in operation at the fair grounds. Two of these passengers are the plaintiffs in this action.

On the day following the accident, the president of the respondent corporation went personally to Seattle to inspect the machine. One week later, one of respondent's employees went to Seattle and altered and repaired the gates on each of the 18 seats on the machine, at respondent's expense.

The respondent's affidavit admits the above facts, but states that respondent does no business whatever in Washington, has no agent or employee in Washington, owns no property in Washington, has no office or telephone listing in Washington, and at no time relevant to this case has respondent sold or solicited the sale of any goods or merchandise within the State of Washington.

After a hearing on the motion to quash and filing a memorandum opinion, on December 5, 1962, the trial court entered an order quashing the service on the grounds that the court lacked jurisdiction over the respondent.

The questions for review are: Was the ruling by the trial court consistent with RCW 4.28.180 and RCW 4.28.185, which provide for personal service out of the state; and, if jurisdiction is asserted, would it meet the requirements of the due process clauses of the federal and state constitutions as set forth in *International Shoe Co. v. Washington,* 326 U. S. 310, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057?

RCW 4.28.180, the section of the statute under which out-of-state service is permitted, reads as follows:

"Personal service of summons or other process may be made upon any party outside the state. If upon a citizen or resident of this state or upon a person who has submitted to the jurisdiction of the courts of this state, it shall have the force and effect of personal service within this state; otherwise it shall have the force and effect of service by publication. The summons upon the party out of the state shall contain the same and be served in like manner as personal summons within the state, except it shall require the party to appear and answer within sixty days after such personal service out of the state."

RCW 4.28.185 provides as follows:

"(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

"(a) The transaction of any business within this state;

"(b) The commission of a tortious act within this state;

"(c) The ownership, use, or possession of any property whether real or personal situated in this state;

" . . .

"(2) Service of process upon any person who is subject to the jurisdiction of the courts of this state, as provided in this section, may be made by personally serving the defendant outside this state, as provided in RCW 4.28.180, with the same force and effect as though personally served within this state.

"(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section. . . ."

The power of a state to acquire jurisdiction over non-residents has been before the courts in many aspects for many years. In the famous case of *Pennoyer v. Neff*, 95 U. S. 714, 24 L. Ed. 565, it was established that the due process clause of the fourteenth amendment to the United States Constitution is violated where a court renders a personal judgment against a nonresident individual defendant without having jurisdiction over him and that, as a matter of due process, it cannot acquire such jurisdiction

merely by serving process upon him outside the forum or by publication.

Since then, the concept of state jurisdiction over non-residents has been greatly expanded. This development is well summarized in the words of Chief Justice Stone in *International Shoe Co. v. Washington, supra,* where he said (p. 316):

"Historically the jurisdiction of courts to render judgment *in personam* is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. *Pennoyer v. Neff,* 95 U. S. 714, 733. But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' [citing cases]

" . . .

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. [citing cases] Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. . . ."

The appellants contend that there were Washington "minimum contacts" chargeable against the respondent, so that the maintenance of suit in this state does not "offend traditional notions of fair play and substantial justice" as set forth in the case of *International Shoe Co. v. Washington, supra,* in the following particulars:

1. By the transaction of business within this state;

2. By the ownership, use and possession of property situated within this state;

3. By the commission of a tortious act within this state; and

4. Due to the inconvenience imposed upon the plaintiffs should they be required to wage their suit in Oregon.

In a very recent case, *Tyee Constr. Co. v. Dulien Steel Products, ante* pp. 106, 109, 381 P. (2d) 245, this court said:

".  .  . the statute, except as may be limited by its terms, reflects on the part of the legislature 'a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due-process clause.' "

After a very complete analysis of the law with regard to jurisdiction acquired by a court under an out-of-state service, the court held that under the circumstances there presented, the assumption of in personam jurisdiction over Belyea Company in that action would offend "traditional notions of fair play and substantial justice" within the contemplation of the due process clause. But there is a marked difference between the facts presented in that case and those in the case at bar. In the *Tyee* case, Belyea had been brought into the case because of a contract between two other parties, not because of doing business or of any acts done in this state. The "contacts," if any, were very remote. In the case at bar, there were substantial business contacts, in addition to the commission of a "tortious act" within this state.

◼ (1) and (2) It is very plain that the activities in Seattle on the part of the respondent, incidental to the sale, installation, and maintenance of the amusement machine, constituted the transaction of business, which satisfy the "minimum contacts" requirement. The machine involved in the action was purchased from the respondent under a conditional sales contract in which ownership was reserved, and which required Cohn to make specific payments to respondent before title passed. Respondent, as vendor, under the terms of the contract and the laws of this state, had the unconditional right to repossess the property in the event of Cohn's default on any of the installment payments. If necessary, the respondent could have availed

itself of the use of the Washington courts to enforce this right. Since it accepted the benefits of the Washington law, it should be subject to its burdens. The president of respondent personally went to Seattle and visited the machine at the site, discussed the lighting equipment with Cohn's manager, and, the day after the accident, again went to Seattle and inspected the machine.

The respondent also held itself out as available to service and repair the machine at any time such service and repairs were required and, one week following the accident, one of the respondent's employees went to the fair grounds and made certain alterations on the machine, at respondent's expense.

". . . The 'quality and nature' of the activities control, not the number of the acts nor mechanical standards. . . ." *Calagaz v. Calhoon*, 309 F. (2d) 248, 255.

"In any determination of the question whether a foreign corporation is doing business in the state, the fact that none of several acts or transactions, considered separately, constitute doing business is not conclusive. As stated by Mr. Justice Holmes [*Edwards v. Chile Copper Co.* 270 U. S. 452, 70 L. Ed. 678, 46 S. Ct. 345], the court 'cannot let the fagot be destroyed by taking up each item of conduct separately and breaking the stick. The activities and situation must be judged as a whole.' Thus, it has been declared that a foreign corporation may safely be said to be doing business wherever an important combination of functions is being performed, such as the ownership, possession, or control of property, dealing with others in reference to the property, the exercise of discretion, . . ." 23 Am. Jur., Foreign Corporations § 361, p. 338.

The retention of title to the machine under the conditional sales contract when the sale was made, even if the vendor's interest had been disposed of prior to the action, might not satisfy the jurisdictional requirement of "The ownership . . . of any property whether real or personal situated in this state," if it stood alone, but, combined with the activities in the nature of the transaction of business, as mentioned above, would be one more "stick in the fagot" to justify the courts of this state in taking jurisdiction of the action.

(3) Respondent has argued that, since the sale of the machine was made in Oregon, respondent cannot be charged with "The commission of a tortious act within this state" as provided in RCW 4.28.185(1)(b).

The definitions of "tortious" and "the place of wrong" are given in the Restatement, as follows:

"The word 'tortious' is used throughout the Restatement of this Subject to denote the fact that conduct whether of act or omission is of such a character as to subject the actor to liability under the principles of the law of Torts." Restatement, Torts, § 6.

"The place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place.

"*Comment*:

"a. Each state has legislative jurisdiction to determine the legal effect of acts done or events caused within its territory . . . If consequences of an act done in one state occur in another state, each state in which any event in the series of act and consequences occurs may exercise legislative jurisdiction to create rights or other interests as a result thereof . . . Thus, both the state in which the actor acts and the state in which legal consequences of his act occur have legislative jurisdiction to impose an obligation to pay for harm caused thereby. . . ." Restatement, Conflict of Laws § 377.

Our statute is copied almost verbatim from the Illinois statute (Ill. Anno. St. 110, § 17). The case of *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill. (2d) 432, 176 N. E. (2d) 761 (1961), interprets the Illinois statute in a case which involves facts quite parallel to the facts of this case. There, the defendant, an Ohio corporation, manufactured a radiator valve in Ohio and sold it to a radiator company in Pennsylvania, which installed the valve on a hot water heater in Pennsylvania. The Pennsylvania company sold the heater to a consumer in Illinois, who was injured in that state when the heater exploded. The defendant valve company did no business whatever in Illinois, had no agent there, and all the sales to the Pennsylvania company were made out of Illinois.

In its decision, the Illinois court said:

"The wrong in the case at bar did not originate in the conduct of a servant physically present here, but arose instead from acts performed at the place of manufacture. Only the consequences occurred in Illinois. It is well established, however, that in law the place of a wrong is where the last event takes place which is necessary to render the the actor liable. (Restatement, Conflict of Laws, sec. 377.) A second indication that the place of injury is the determining factor is found in rules governing the time within which an action must be brought. In applying statutes of limitation our court has computed the period from the time when the injury is done. . . . *We think it is clear that the alleged negligence in manufacturing the valve cannot be separated from the resulting injury; and that for present purposes, like those of liability and limitations, the tort was committed in Illinois.* (p. 435)

"Titan seeks to avoid this result by arguing that instead of using the word 'tort,' the legislature employed the term 'tortious act'; and that the latter refers only to the act or conduct, separate and apart from any consequences thereof. We cannot accept the argument. *To be tortious an act must cause injury. The concept of injury is an inseparable part of the phrase.* In determining legislative intention courts will read words in their ordinary and popularly understood sense. . . . We think the intent should be determined less from technicalities of definition than from considerations of general purpose and effect. To adopt the criteria urged by defendant would tend to promote litigation over extraneous issues concerning the elements of a tort and the territorial incidence of each, *whereas the test should be concerned more with those substantial elements of convenience and justice presumably contemplated by the legislature.* . . . the statute contemplates the exertion of jurisdiction over nonresident defendants to the extent permitted by the due-process clause. (p. 436)

" . . .

"In the case at bar the defendant's only contact with this State is found in the fact that a product manufactured in Ohio was incorporated, in Pennsylvania, into a hot water heater which in the course of commerce was sold to an Illinois consumer. The record fails to disclose whether defendant has done any other business in Illinois, either directly or indirectly; and it is argued, in reliance on the *International Shoe* test, that since a course of business here has not been shown there are no 'minimum contacts' suf-

ficient to support jurisdiction. We do not think, however, that doing a given volume of business is the only way in which a nonresident can form the required connection with this State. Since the *International Shoe case* was decided the requirements for jurisdiction have been further relaxed, so that *at the present time it is sufficient if the act or transaction itself has a substantial connection with the State of the forum.* (p. 438)

" . . .

" . . . the trend in defining due process of law is away from the emphasis on territorial limitations and toward emphasis on providing adequate notice and opportunity to be heard: from the court with immediate power over the defendant, toward the court in which both parties can most conveniently settle their dispute. (p. 440)

" . . .

"With the increasing specialization of commercial activity and the growing interdependence of business enterprises it is seldom that a manufacturer deals directly with consumers in other States. The fact that the benefit he derives from its laws is an indirect one, however, does not make it any the less essential to the conduct of his business; and *it is not unreasonable, where a cause of action arises from alleged defects in his product, to say that the use of such products in the ordinary course of commerce is sufficient contact with this State to justify a requirement that he defend here.*

"As a general proposition, if a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products. . . ." (p. 442) (Italics ours.)

Since RCW 4.28.180 and RCW 4.28.185 were adopted by our legislature in 1959, and the decision of the Illinois court in the *Gray* case was rendered in 1961, we do not feel bound to accept the construction placed upon the statute by that court. However, we deem the reasons set forth by that court in making its decision in the case of *Gray v. American Radiator & Standard Sanitary Corp., supra,* are sound and, therefore, hold that the respondent is charged with "the commission of a tortious act within the state."

(4) The probable inconvenience incident to re-

spondent's defense in this state is also a matter of concern, but it would be far less burdensome for respondent to come into Washington to attend our courts than it would be for the plaintiffs to be compelled to sue in Oregon. The respondent built for Cohn's use a machine which was a potentially dangerous instrument. Accordingly, the courts of this state have a legitimate interest in asserting jurisdiction in this case to protect its citizens from this inherently dangerous machine.

The accident happened in the state of Washington. The plaintiffs, as well as witnesses, including medical, hospital and expert witnesses, who will testify to the defective condition of the machine, are all in Washington. The plaintiffs would be required to spend large sums of money to produce them as witnesses in an Oregon court. In addition, the other defendants are amenable to jurisdiction in Washington, but not in Oregon, so there would be cast upon the plaintiffs the burden of having to bring two law suits.

The California court has said:

". . . Admittedly, defendant Empire will be put to expense in having to defend in California, but contemporary transportation and communication make such a defense less burdensome than in former years. [citing cases] While inconvenience to the defendant is an important factor to be considered (International Shoe Co. v. State of Washington, supra, 326 U. S. 310, 317, 66 S. Ct. 154, 90 L. Ed. 95), there is no constitutional requirement that the hardship of litigating in a distant state need always be borne by the plaintiff. [citing cases]" *Empire Steel Corp. of Texas v. Superior Court of Los Angeles Cy.*, 17 Cal. Rptr. 150, 157, 366 P. (2d) 502 (1961).

"The learned trial court properly considered the disadvantages and inconveniences of each party in a trial in a Wisconsin court, balancing the respective interests of the plaintiff and of Mo Pac. We consider that the expense or inconvenience accruing to the defendant in a trial here does not outweigh that imposed on the plaintiff by a trial elsewhere, nor is there any probability that justice can be better served in another forum than Wisconsin where the accident took place. . . ." *Lau v. Chicago & North Western R. Co.*, 14 Wis. (2d) 329, 336, 111 N. W. (2d) 158 (1961).

■ We have taken into consideration the circumstances herein presented: the activities of the respondent in connection with the operation of the machine in Washington, its retention of title (even if only temporary), the commission of the tortious act which resulted in the injuries sustained by the plaintiffs and conclude that the convenience of all parties concerned would best be served by trial in the courts of this state. We construe RCW 4.28.185 as providing for jurisdiction in this state and that assumption of in personam jurisdiction over the respondent in this action would not "offend traditional notions of fair play and substantial justice," within the contemplation of the due process clause, and hold that the trial court erred in quashing summons and dismissing the amended complaint.

The judgment is reversed and the cause remanded to the Superior Court of King County, with directions to deny the motion to quash.

OTT, C. J., ROSELLINI, HUNTER, and HAMILTON, JJ., concur.

---

November 19, 1963. Petition for rehearing denied.