[No. 37411. Department One. June 17, 1965.]

GOLDEN GATE HOP RANCH, INC., *Respondent*, v. VELSICOL CHEMICAL CORPORATION, *Appellant.**

*Reported in 403 P.2d 351.

*Helsell, Paul, Fetterman, Todd & Hokanson, Paul Fetterman,* and *William A. Helsell,* for appellant.

*Alan A. McDonald* (of *Halverson, Applegate, McDonald & Weeks*), for respondent.

Rosellini, C. J.—The respondent, owner of a large hop ranch in Yakima County, Washington, obtained a jury verdict in the trial court for $215,027.26, in its suit brought against the manufacturer of a chemical called "heptachlor" for damage to its hop yards and lands, which the jury found was occasioned by the negligence of an agent of the appellant who recommended that the chemical be used on the hops.

The appellant's first contention is that its motion to quash service of process was improperly denied. A copy of the summons and complaint were served on a corporate officer of the appellant in Chicago, Illinois, on September 4, 1959. The statute which gives the courts of this state jurisdiction over a nonresident when he has been served personally outside this state, is RCW 4.28.185. That statute provides (in pertinent part):

(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

(a) The transaction of any business within this state;
(b) The commission of a tortious act within this state;

. . . .

(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

(4) Personal service outside the state shall be valid only when an affidavit is made and filed to the effect that service cannot be made within the state.

The act upon which liability in this case was predicated was the writing and mailing of a letter from the Chicago office of the appellant corporation, recommending the use of heptachlor on hops. The letter was sent to an officer of the respondent corporation's parent corporation in New York. The appellant contends that, since this act did not occur in this state, the requirements of the statute were not met.

However, in the recent case of *Nixon v. Cohn*, 62 Wn.2d 987, 385 P.2d 305, we held that, where damages result from negligence of a defendant, the injury occurring in this state is an inseparable part of the "tortious act," as that term is used in the statute. Consequently, the respondent brought itself within one of the subdivisions of the act and was entitled to take advantage of its provisions.

There was also evidence that, while heptachlor in its raw form is not sold in this state, but is sold to manufacturers in other states who combine it with other ingredients to form usable pesticides, which are then sold through distributors in this state, the appellant manufacturer does engage in nation-wide advertising and has sent a representative to this state to do "missionary" work for the product.

The company also subsidizes a research laboratory at Washington State College, at Pullman, which conducts tests in the use of the chemical. A strong argument can be

made that these activities were sufficient to constitute the transacting of business within this state, as that term is used in the statute. However, it is not necessary for us to decide whether the appellant's activities fall within that classification, inasmuch as the fact that the injury occurred in this state was sufficient to bring the case within the "tortious act" classification. *Nixon v. Cohn, supra.*

We note also in passing that it appears that the court in Yakima County was the most convenient forum in which to try the issues.

The appellant maintains that service was not effected according to the terms of the statute inasmuch as the affidavit required by paragraph 4 thereof was not filed until September 15, 1959, eleven days after the summons and complaint were delivered.

The statute does not provide that the affidavit must be filed *before* the summons and complaint are served, but simply that the service will be valid only when such an affidavit is filed. Consequently, the service became valid when the affidavit was filed. Furthermore, we have the rule in this state that substantial and not strict compliance is sufficient where a proper affidavit is filed, although late, where it appears that no injury was done the defendant as a result of the late filing. *Whitney v. Knowlton,* 33 Wash. 319, 74 Pac. 469.

The appellant urges that its motion for a new trial should have been granted because of misconduct of the bailiff. Five jurors made affidavits that the bailiff had told them, on Friday evening after they had been sent to begin their deliberations, that if they did not reach a verdict before 10 o'clock that evening, they would be locked up for the weekend, because the judge would not be there to receive their verdict before Monday morning.

The bailiff denied that he made this statement, and other jurors signed affidavits that no such statement was made in their presence. The trial court found as a fact that the statement was not made. Since the evidence on the matter was conflicting, it was necessary that the trial

court make a finding of fact as to whether the alleged misconduct occurred; and this court will accept the trial court's finding. *Gardner v. Malone*, 60 Wn.2d 836, 376 P.2d 651.

By its fourth assignment of error, the appellant advances the proposition that the evidence was insufficient to support a finding that it was guilty of negligence.

The evidence established that the respondent, through an agent of its parent corporation, applied to the appellant for information about the proper use of products containing heptachlor on its hop crops. The inquiry was inspired by the Miller Amendment of the Federal Food, Drug and Cosmetic Act pertaining to residues of pesticides on raw agricultural commodities, which might be harmful to human beings. The appellant's entomologist replied with the following letter:

May 4, 1956

Mr. S. Stinor Gimbel
S. S. Steiner, Inc.
655 Madison Avenue
New York 21, N. Y.
Dear Mr. Gimbel:

Your letter of April 27, 1956 was referred to me for answering since I have been handling our label acceptances.

We have a release from the hop growers' association of Washington listing two types of applications for heptachlor on hops as follows:

1—50 Lbs. of Heptachlor 2½% Dust per acre directed at the base of the plants. This application is made early in June.

2—Apply 5 Lbs. of actual heptachlor to the soil before growth starts and disk into the soil.

These applications would not leave a residue on the harvested part of the plant due to the timing of the applications.

The Food and Drug Administration do not require tolerances if the application of heptachlor is made at a time that will not produce a residue. Hence no tolerance for the use of heptachlor on hops is necessary if either of the above recommendations are used. I called the Plant Pest Control Board, Washington, D. C., who registers labels, and they confirmed this opinion on tolerances.

We trust this will give you the necessary information for passing out a release to your growers.

Sincerely yours,
VELSICOL CHEMICAL CORPORATION
J. Everett Bussart
Chief Entomologist

JEB: GC

The writer of this letter did not know whether heptachlor would be harmful to hops, but he was aware that it had not been tested on hops, as this information was contained in a bulletin from the Washington Hop Growers, which he quoted in answering the respondent's inquiry. However, he did not mention this fact in the letter. He was also aware that a label recommending use of the product on hop crops could not be used until tests had been made and approval of the federal government obtained. The appellant had never recommended use of the product on hops, but the respondent contends, and the trial court held, that this letter could be construed as a recommendation for its use.

If this letter did constitute a recommendation that the product be used on the respondent's hops, and if the appellant knew or should have known that the product was dangerous to hops, the appellant was negligent in not advising the respondent of the danger. It was for the jury to determine from the evidence whether or not these elements of negligence were proved.

The fact that there was no privity of contract between the parties does not preclude the action based on a theory of negligence. In the recent case of *Nakanishi v. Foster*, 64 Wn.2d 647, 393 P.2d 635, we laid down the rule that a manufacturer or processor who offers goods on the market to remote users must use reasonable care where there is a foreseeable risk of harm if reasonable care is not used. It is true that in this case there was no negligence in the manufacture of the product and no defect in the product itself, but the jury could find that there was negligence on the part of the appellant's agent in not warning the prospective purchaser of a possible danger of which he was or should have been aware.

It is next contended that the court erroneously permitted the respondent to introduce evidence showing that the appellant made applications for label clearance for the use of heptachlor on hop crops after the correspondence with the respondent's representative. The appellant cites *Aldread v. Northern Pac. Ry. Co.*, 93 Wash. 209, 160 Pac. 429, which sets forth the familiar rule that the taking of precautions against future accidents is not an admission of negligence in the past and is not probative of such negligence.

The fact that the appellant made application for label clearance very shortly after he had answered the respondent's inquiry does not tend to show that the appellant knew the product was dangerous to hops when the inquiry was made, as the appellant points out. However, taken in conjunction with the evidence that label clearance is required by the federal government, it does show that he was aware of a possible danger, and was aware, or should have been aware, that no clearance had been obtained to recommend the product for use on hops.

 Evidence of subsequent conduct is inadmissible only when it has no probative value on the issues before the court. 2 Wigmore, Evidence § 283 (3d ed.). All facts are admissible in evidence which afford reasonable inferences or throw any light upon contested matter, and "relevancy" means the logical relation between proposed evidence and the fact to be established. *Chase v. Beard*, 55 Wn.2d 58, 346 P.2d 315. We do not find an abuse of discretion in the admission of this evidence. The appellant did not request an instruction limiting the purposes for which the evidence could be considered and consequently cannot complain that none was given.

 Error is assigned to the admission in evidence of a lease containing an option to purchase, which the respondent negotiated to obtain additional land when 112 acres had to be taken out of production as a result of the damage done by the heptachlor. It is the appellant's contention that the option price for the purchase of roots and trellis was inadmissible to show the cost of replanting the 112

acres. As the respondent points out, the lease was admitted to rebut an inference made by the appellant that the 112 acres was voluntarily abandoned, and no instruction was requested limiting its purpose. Consequently the fact that it was submitted to the jury without limitation as to its purpose cannot be claimed as error.

The appellant alleges that the court erred in allowing the jury to consider the respondent's claimed loss of sales of hop roots, because no sales of roots had been made in prior years. It cites our cases holding that lost profits cannot be recovered unless it is shown that the plaintiff's business has been in operation for such a period of time as to give it permanency and recognition, and that such business was earning a profit which could be reasonably ascertained and approximated. Because there was no evidence that the respondent had ever realized a profit from the sale of hop roots, the appellant maintains, this item of claimed damage was speculative and not recoverable.

Answering this contention, the respondent points to our recent case of *Larsen v. Walton Plywood Co.*, 65 Wn.2d 1, 17, 390 P.2d 677, wherein we observed that strict adherence to the "new business" rule can result in the denial of damages where justice requires their allowance and approved the rule laid down in *Barbier v. Barry*, 345 S. W.2d 557, 563 (Tex. Civ. App. 1961), as follows: Lost profits will not be denied merely because business is new if factual data is available to furnish a basis for computation of probable losses.

There was evidence from which the jury could find that the respondent would have made substantial sales of slip roots in the years in question, although it had not made a practice of selling them in the past. There was evidence that such roots had been produced with fair abundance in the past and that the market for them had risen and they were bringing a good price. The evidence was sufficient to support a verdict and was not merely speculative.

The remaining assignments of error, which have been examined and found to be without merit, do not warrant discussion.

The judgment is affirmed.

OTT, HUNTER, and HALE, JJ., and STAFFORD, J. Pro Tem., concur.

September 14, 1965. Petition for rehearing denied.

*Reported in 403 P.2d 343.