Robert **LICHINA**, Plaintiff,

v.

**FUTURA, INC.**, a Delaware corporation, and Riblet Tramway Company, a Washington corporation, Defendants.

Civ. A. No. 9071.

United States District Court
D. Colorado.

Aug. 29, 1966.

William H. Erickson, Denver, Colo., and Tilg & Koch, Milwaukee, Wis., for plaintiff.

Sheldon & Nordmark, by Richard C. McLean, Denver, Colo., for defendant Futura, Inc., and Darwin D. Coit, Denver, Colo., for defendant Riblet Tramway Co.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

This matter is before the Court on the motions of defendant Riblet Tramway Company to quash service of the alias summons and second amended complaint, to vacate the Orders of the Court dated July 29, 1966, to dismiss, and to strike portions of the second amended complaint. The Court granted an earlier motion to quash because the plaintiff failed to comply with the exact procedure prescribed in Colo.Rev.Stat.Ann. § 31–9–19(3), as amended, Colo.Sess. Laws ch. 109, p. 437 (1965).

Since that time the plaintiff has again sought to perfect *in personam* service upon the defendant Riblet Tramway Company, a foreign corporation. He has caused process to be served on the Secretary of State in attempted compliance with Colo.Rev.Stat.Ann. § 31–9–19(3), and has served the defendant in Washington, in attempted compliance with Colo.Rev.Stat.Ann. §§ 37–1–26, 37–1–27, Colo.Sess.Laws ch. 119, p. 472 (1965). The latter statute, commonly called the Colorado "long-arm" statute, provides in part as follows:

> Section 1. — Jurisdiction of courts. —(1) (a) Engaging in any act [hereinafter] enumerated by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person, and, if a natural person his personal representative, to the jurisdiction of the courts of this state, concerning any cause of action arising from:
>
> (b) The transaction of any business within this state;
>
> (c) The commission of a tortious act within this state;
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> Section 2. — Service of process.— (1) Service of process upon any person subject to the jurisdiction of the courts of Colorado may be made by personally serving the summons upon the defendant outside this state, in the manner prescribed by the Colorado rules of

civil procedure, with the same force and effect as if the summons had been personally served within this state.

Defendant Riblet urges that neither of the statutes mentioned authorizes service of process on it, and that this Court therefore lacks *in personam* jurisdiction. More specifically, the defendant argues that it is neither "doing" nor "transacting" business in Colorado, and that it has not committed a "tortious act" within this state.

■■ The question of when a state can obtain *in personam* jurisdiction over a non-resident by service of process outside the state is basically governed by the "minimum contacts" test enunciated in International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In order for the non-resident defendant to be subject to the state's personal jurisdiction, "he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" The Colorado "long-arm" statute was designed to codify the "minimum contacts" principle. The defendant denies having the requisite contacts with the forum and therefore disputes the application of the Colorado statute in this case.

■ 1. The problem of whether personal jurisdiction can be based upon the "commission of a tortious act within the state" on facts such as those alleged in the present case has been considered by courts in several other jurisdictions having "long-arm" statutes identical with Colorado's statute. Here, plaintiff alleges negligent acts by the defendant which must have taken place outside of the state, but the plaintiff's injuries occurred within the state. Can the "tortious act" be said to have been committed within Colorado?

Many courts have held that in such a case the tortious act is, at least in part, committed in the forum state. The analogy is drawn to the choice of law principle that "the place of the wrong" is the state in which the last act occurred which gave rise to the cause of action. This is necessarily the state where the injury occurred. Personal jurisdiction has been upheld on this basis in Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961); Anderson v. Penncraft Tool Co., 200 F.Supp. 145 (N.D.Ill.1961); Ehlers v. United States Heating & Cooling Mfg. Corp., 267 Minn. 56, 124 N.W.2d 824 (1963); and Nixon v. Cohn, 62 Wash.2d 987, 385 P.2d 305 (1963).

In Feathers v. McLucas, 15 N.Y.2d 443, 458, 261 N.Y.S.2d 8, 19, 209 N.E.2d 68, 76 (1965), cert. denied Estwing Mfg. Co. v. Singer, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158, the Court of Appeals of New York disapproved the holding and reasoning of the Gray decision and its successors. The Court pointed out that the analogy to choice of law principles is not an apt one; the place of the wrong for choice of law purposes and for jurisdictional purposes present separate and distinct problems. The statute clearly provides that personal jurisdiction can only be grounded on the commission of a tortious act *within* the state, and the legislature did not include tortious acts committed without the state which gave rise to injuries within the state. Had that been the legislative intent it could have been accomplished by specific language to that effect.

■ This Court agrees with the reasoning of the New York Court of Appeals and has previously said that: "Before this statute has any effect on situations of this nature, both the asserted negligent act or acts of the non-resident defendant, as well as the injury they produce, must occur within the state of Colorado." Arter v. X–Acto, Inc. (#8976), Order of October 19, 1965. Since the alleged tortious conduct by Riblet Tramway Company must have taken place outside of the state, personal jurisdiction over the defendant cannot be based upon this section of the statute.

■ 2. This defendant also denies that it has been "doing" or "transacting" business in the state of Colorado. Again the inquiry must be directed to the "min-

imum contacts" doctrine. In an Order dated August 13, 1965 this Court denied the motion of Riblet as a third party defendant to quash the summons and dismiss the third party claim brought by defendant Futura, Inc. At that time we held that the minimum contacts requirement had been satisfied, and we recognized the following as relevant contacts:

(a) Salesmen of the third party defendant have on several occasions come into Colorado in pursuit of the said third party defendant's business;

(b) The third party defendant has consummated several sales of ski tows or lifts in the State of Colorado;

(c) Several of the lifts or tows sold in Colorado were sold F.O.B. their Colorado destination rather than F.O.B. the shipping point;

(d) Tows or lifts are of necessity designed for specific areas in Colorado;

(e) After such lifts or tows are installed they are inspected by third party defendant before they may be operated; and

(f) The third party defendant in this instance took a chattel mortgage on the tow in question, thereby continuing its interest in such equipment * * *.

The existence of all of these contacts compels the conclusion that the "minimum contact" test is met in this case, and this Court's exercising personal jurisdiction over the defendant Riblet Tramway Company will not offend "traditional notions of fair play and substantial justice." It can properly be said that the defendant is "doing" or "transacting" business within the state of Colorado.

The relevancy of some of the contacts might be discussed. In Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583, 588 (2d Cir. 1965), the Court pointed out that if the goods were being shipped into the forum state (New York) "F.O.B. New York", the loss would be borne by the defendant who had shipped the goods and he would therefore have a "proprietary stake in the safe operation of the trucks." As the Court stated, he "would have enjoyed the benefits and protections of New York law in an overt physical manner." In the same manner, the defendant in the instant case has enjoyed the benefits and protections of Colorado law.

In Nixon v. Cohn, 62.Wash.2d 987, 385 P.2d 305 (1963), the Court found that the defendant had sufficient contacts with the forum state by retaining a conditional sale interest in the machine which caused the injury, and by holding itself out as available to service the machine. Defendant Riblet also retained a conditional sale interest and could have enforced its right to repossess the ski lift in the Colorado courts. This is another sense in which defendant was enjoying the benefits and protections of Colorado law. It also appears that the defendant was willing to service the lift. The defendant's "Operator's Manual" which was given to Futura, Inc., contained the following language: "Don't fail to call on us for assistance when needed." This is a further indication of the continuing nature of the defendant's business transactions in Colorado.

The Court of Appeals of the Sixth Circuit, in Velandra v. Regie Nationale des Usines Renault, 336 F.2d 292 (6th Cir. 1964), made the following pertinent observations about the "minimum contact" requirement:

In determining whether minimum contacts exist on the basis of the presence or sale of a product within a state, the extent of the contact is related to a number of factors, including the number and value of sales within the state, their ratio to the total market for like or similar products within the state, the quantity or value of the defendant's production, the percentage of the total output sold within the state, as well as the nature of the product, particularly with reference to whether it is inherently dangerous or not. 336 F.2d at 297–298.

The defendant has sold ski lifts to a number of the ski areas in Colorado, and presumably its sales must represent a sub-

stantial percentage of the total market for ski lifts in this state. Certainly a ski lift which transports persons through the air might be viewed as an inherently dangerous product. Because the safety of the public is at stake, the sale of a dangerous product is regarded as a more substantial contact than the sale of a harmless one. Velandra, supra at 298.

■ The essential requirement of the "minimum contacts" rule is that "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Since it is clear that the defendant Riblet Tramway Company has invoked the benefits and protections of the Colorado law, and since the plaintiff has complied with the prescribed method of service, *in personam* jurisdiction has been validly obtained over the defendant. Therefore, the motion of the defendant to quash service of the alias summons and second amended complaint should be denied.

■ Since this Court can properly exercise personal jurisdiction over the defendant Riblet, and the Court's Orders of July 29, 1966 were rendered in aid of such jurisdiction, the defendant's motion to vacate these Orders should also be denied.

■ The motion of the defendant to strike portions of the second amended complaint is essentially based on the assertion that in Colorado one who is not in privity of contract cannot recover on the basis of a breach of implied or express warranty. In Great American Insurance Co. v. "Quick-Way" Truck Shovel Co., 204 F.Supp. 847 (D.Colo.1962), aff'd. 314 F.2d 702 (10th Cir. 1963), Judge Doyle of this Court recognized the rapidly-expanding notion that privity of contract should not be a condition of recovery on a breach of warranty theory, at least where the product causing the injury creates a high degree of hazard to third persons. In the "Quick-Way" case the injury-causing instrumentality was a crane, and in the present case it is allegedly a ski chair lift. Both qualify as inherently dangerous products.

It is therefore ORDERED as follows:

1. That the motion of the defendant to quash service of the alias summons and second amended complaint be, and hereby is, denied.

2. That the motion of the defendant to vacate the Orders of July 29, 1966 relating to service of process be, and hereby is, denied.

3. That the motion of the defendant to strike portions of the second amended complaint be, and hereby is, denied in all respects.

4. That the motion of the defendant to dismiss be, and hereby is, denied.