[No. 40633.    Department Two.    August 21, 1969.]

RUSSEL BOWEN *et al., Respondents,* v. JOHN B. BATEMAN *et al., Respondents,* STANLEY SELIG *et al., Petitioners.*\*

\*Reported in 458 P.2d 269.

*Moe & Kight* and *Milburn D. Kight,* for petitioners.

*Ries & Kenison* and *Darrell E. Ries,* for respondents Bowen.

ENNIS, J.†—Stanley Selig and Ben Selig are residents of the state of Indiana. In January, 1966 they placed advertisements in various newspapers published in the state of Washington, including Seattle and Spokane papers. The advertisements concerned opportunities in Brazilian real estate. Descriptive booklets were offered and interested parties were urged to contact Selig Bros. Real Estate Company in Indianapolis, Indiana for details. The street address and telephone number accompanied the advertisement.

John R. Bateman, a resident of Moses Lake, Washington, responded to the advertisement and was sent a brochure. Thereafter, Bateman called Stanley Selig in Indianapolis, who made what Bateman described as "an interesting presentation." An arrangement was made between Stanley Selig and Bateman whereby Bateman would enter into a contract with Selig to purchase a large block of land in Brazil, with the intent that Bateman would resell it at a price set by Selig. Bateman's price was to be discounted, and Bateman's compensation would be the difference between Bateman's price and the established resale price.

Often, throughout this opinion, petitioners will be spoken of in the singular since all negotiations and transactions were handled by Stanley Selig.

Selig furnished Bateman with information and brochures for use in his contacts with prospective purchasers in the state of Washington. Respondents, Russel Bowen, and oth-

---

†Justice Ennis is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. 4, § 2(a) (amendment 38).

ers similarly situated, relying upon the information and representations contained in the brochures supplied by Selig, entered into contracts to purchase parcels of land in Brazil. Selig agreed to deliver titles directly to respondents and other purchasers when the total price for each parcel was paid, and a provision to that effect was contained in the contract between respondents Bowen and Bateman.

An arrangement was then worked out by Bateman and the Old National Bank at Pasco, Washington, whereby Bowen and other purchasers made payments to the bank, which were remitted directly to Selig.

As it turned out, Selig was never able to comply with the requirements of the Brazilian government with regard to registration of land to be resold and, therefore, was unable to convey title to anyone. When this became known, Bowen commenced an action in the Superior Court for Grant County, individually and as assignee under certain other purchase and sale agreements, to declare the contracts null and void, and to recover judgment against Bateman and the Seligs in the amount of $4,177.84, the amount paid toward the land purchases. The complaint also alleged that the real property was not physically or geographically as represented.

The Seligs were served with summons and complaint in Indiana. They appeared specially and moved to quash the service of summons and complaint on the ground that the Washington court lacked jurisdiction over them. This motion was denied by the trial court and this court issued a writ of certiorari which has brought the matter here for review.

Petitioners contend, by way of affidavit, that neither they nor anyone acting on behalf of Selig Bros. Real Estate Company have done or transacted any business in the state of Washington, sent any agents or salesmen into the state of Washington, or kept or maintained any office, personnel advertising, telephone lists, goods or property in the state of Washington. Ben Selig additionally contends that he is disassociated with any real estate activities participated in by his brother, Stanley.

Respondents Bowen claim jurisdiction over petitioners under the provisions of RCW 4.28.185. The "long-arm statute" provides, in part, as follows:

(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

(a) The transaction of any business within this state;

(b) The commission of a tortious act within this state;

. . .

(2) Service of process upon any person who is subject to the jurisdiction of the courts of this state, as provided in this section, may be made by personally serving the defendant outside this state, as provided in RCW 4.28.180, with the same force and effect as though personally served within this state.

The issue here is whether or not petitioner, individually or through an agent, transacted any business or committed a tortious act within the state of Washington.

We will first consider whether the contacts petitioners had with the state of Washington were sufficient to establish jurisdiction under the long-arm statute apart from any question of agency between Bateman and Selig.

Early analysis of this statute had recourse to the United States Supreme Court decisions which had followed a course of liberalization of the requirements necessary in order to establish jurisdiction over nonresidents. United States Supreme Court cases resulted in the formulation of the minimum contact rule. *International Shoe Co. v. Washington,* 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057 (1945); *McGee v. International Life Ins. Co.,* 355 U.S. 220, 2 L. Ed. 2d 223, 78 S. Ct. 199 (1957). These cases were analyzed in *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wn.2d 106, 381 P.2d 245 (1963). In that case, we said at 115-16:

Against the backdrop of these decisions, and within the framework of our statute, it would appear reasonable, however, to conclude that there are three basic factors

which must coincide if jurisdiction is to be entertained. Such would appear to be: (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

(Footnotes omitted.)

Thereafter a series of cases refined and spelled out the broad guidelines established in *Tyee.*

We will examine these cases in order to determine the type of acts or transactions that have been deemed sufficient to confer Washington jurisdiction on a nonresident.

In *Nixon v. Cohn,* 62 Wn.2d 987, 385 P.2d 305 (1963), an Oregon concern manufactured and sold an amusement ride to a Washington resident with knowledge that it would be used at the Century 21 Exposition at Seattle. The buyer took delivery of the machine in Oregon. After the machine was placed in operation, three passengers were hurled from it. They sustained injuries and two of the passengers became plaintiffs in an action which included the Oregon manufacturer as a defendant. The Oregon corporation contested the jurisdiction claiming that it did no business in Washington, had no agent or employee in Washington, owned no property in Washington, had no office or telephone listing in Washington, and at no time relevant to that case sold or solicited the sale of any goods or merchandise within the state of Washington.

Our court ruled that the Oregon firm was subject to Washington jurisdiction by reason of the fact that the machine was sold under a conditional sale contract in which ownership was reserved to the seller until the purchase price was paid in full. The contract conferred the right of repossession in the event of default. The court pointed out

that the seller could have availed itself of the use of Washington courts if necessary to enforce its rights, and that since it accepted the benefits of Washington law, it should be subject to its burdens.

In that decision, the court called attention to the fact that the president of the Oregon corporation had made a trip to Seattle to discuss the lighting equipment, and, after the accident, again went to Seattle to inspect the machine. Further, the Oregon manufacturer had held itself out as available to service the machine when needed, and did make certain alterations after the accident. The court pointed out that while the retention of title standing alone might not be enough to confer jurisdiction, when coupled with the other acts above mentioned, it would justify our courts in taking jurisdiction.

The court also dealt at some length with the "tortious act" provision of the statute and held that where damages occur in Washington as a result of negligence, the injury is an inseparable part of the "tortious act."

In *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.*, 66 Wn.2d 469, 403 P.2d 351 (1965), the court based its decision on the *Nixon v. Cohn, supra,* "tortious act" holding and required an Illinois corporation to submit to Washington jurisdiction. The act upon which liability was predicated was the writing and mailing of a letter from the Chicago office of the appellant corporation, recommending the use of heptachlor on hops. In that opinion, the court mentioned some of the activities the corporation engaged in connecting it with Washington, but declined to make a determination that it was transacting business here.

In *Quigley v. Spano Crane Sales & Serv., Inc.*, 70 Wn.2d 198, 422 P.2d 512 (1967), we held that the sale of a crane by a California firm to a Washington concern, shipping the item to Washington, and retaining title until payment, constituted doing business here within contemplation of RCW 4.28.185. In that case the manufacturer had mailed advertising literature to potential customers in Washington. Though the California firm had made prior isolated sales in

the state of Washington, jurisdiction was predicated on the single transaction.

These cases were product liability cases which involved negligence in the manufacture or use of tangible items.

Two more cases of this class were decided in 1967 and they will be mentioned briefly. *Oliver v. American Motors Corp.*, 70 Wn.2d 875, 425 P.2d 647 (1967) and *Callahan v. Keystone Fireworks Mfg. Co.*, 72 Wn.2d 823, 435 P.2d 626 (1967). In the first of these cases jurisdiction was denied upon the ground that the sale of an automobile by an Oregon dealer to an Oregon resident was a local transaction. The fact of injury in Washington was held not to subject a nonresident dealer to our jurisdiction if nothing further appeared by way of a purposeful act toward the establishment of contact with this state. In the second case, the court found an abundance of contacts with this forum and held that the requirements of this criteria had "without question" been satisfied.

We come now to *Griffiths & Sprague Stevedoring Co. v. Bayly, Martin & Fay, Inc.*, 71 Wn.2d 679, 430 P.2d 600 (1967). In that case, a California insurance brokerage ordered, by telephone and mail, a policy of aircraft insurance from an insurance broker in Seattle. The Seattle broker procured the coverage from Lloyd's in London. We held that the nonresident firm had performed acts in making it a party to and participant in a business transaction in Washington, thus submitting to the jurisdiction of the Washington courts under the long-arm statute as to that particular transaction.

Then, in *Thiry v. Atlantic Monthly Co.*, 74 Wn.2d 679, 445 P.2d 1012 (1968), we considered the statute in connection with a libel case. The defendant maintained its editorial, circulation, and advertising offices in Boston, Massachusetts. It had no employees, property, or shareholders, nor had it been licensed to do business in the state of Washington. We said at 681:

> If the circulation of an alleged libel in the state of Washington, under the circumstances of this case, constitutes either the "commission of a tortious act" or the "transac-

tion of any business" within this state, then the answer to the certified question [jurisdiction under long-arm statute] must be "yes."

We do answer in the affirmative. In *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.*, 66 Wn.2d 469, 471, 403 P.2d 351 (1965), we held that "where damages result from negligence of a defendant, the injury occurring in this state is an inseparable part of the 'tortious act,' as that term is used in the statute." (The statute referred to being our long-arm statute.) There, like here, the claimed damages were suffered within this state as a result of the alleged tortious act occurring without the state. *See also Nixon v. Cohn*, 62 Wn.2d 987, 385 P.2d 305 (1963). Certainly, if Thiry incurred damages, they were suffered here in the state of his residence and principal place of business. The alleged tortious act thus occurred in this state.

Having concluded that the act occurred in this state, we need not consider the question of whether Atlantic transacted business within this state under the foregoing set of facts and within the meaning of RCW 4.28.185, *supra*.

The foregoing cases serve to illustrate the class of acts which have been held to constitute sufficient contact with this forum to place the actors within reach of our long-arm statute, either on the basis of transacting business or in committing a tortious act.

■ We may now examine the acts performed by the petitioners in the instant case. Based upon the record before us, the petitioners Selig did the following: (1) placed advertisements in various Washington newspapers; (2) mailed a brochure to Bateman; (3) made an "interesting telephone presentation" to Bateman, which culminated in an arrangement whereby Bateman would purchase land from Selig for purposes of resale at a price set by Selig; (4) furnished Bateman with information and brochures for use in his contacts with prospective purchasers in the state of Washington; (5) entered into a real estate contract with Bateman; (6) held himself out as an intermediary broker in Bateman's contracts with ultimate Washington purchasers and agreed to deliver title directly from himself to such

ultimate purchasers upon payment in full; and (7) received and retained payments from Washington purchasers under an arrangement with the Old National Bank of Pasco.

It is obvious that the Seligs deliberately and purposefully sought contact with Washington residents for the purpose of entering into real estate transactions. The Seligs' efforts produced results, and Stanley Selig became a party to a written contract with Bateman and a participant in several other contracts between Bateman and others of whom respondent Bowen was one. The benefits of these contracts flowed directly to Selig and these contracts were enforceable in the courts of the state of Washington.

Under the rationale contained in *Nixon v. Cohn, supra,* and *Griffiths & Sprague Stevedoring v. Bayly, Martin & Fay, Inc., supra,* we can say that without question petitioners by their acts, contracts, and negotiations have individually transacted business within the state of Washington and are thus within reach of our long-arm statute.

■ The rules set out in the line of cases examined above, make it equally clear that jurisdiction attaches under the "tortious act" provision of the long-arm statute. Petitioners argue that the action here is a suit in equity for rescission of a contract and does not involve negligence. Negligence is not the only wrongdoing that sounds in tort. The complaint here alleges fraud and misrepresentation in that Selig made false representations knowing they would be relied upon by Washington residents. The fact that respondent may have a choice of remedies does not alter the tortious nature of petitioners' acts.

■ Assuming, arguendo, that all tortious acts in this case were committed outside the state of Washington, if the injury is sustained within the state, then the tortious acts and the injury are inseparable and jurisdiction lies in Washington where the injury occurred. *Nixon v. Cohn, supra; Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp., supra; Thiry v. Atlantic Monthly Co., supra.*

■ Another factor which we are asked to consider is whether the assumption of jurisdiction would offend tradi-

tional notions of fair play and substantial justice. In this connection we can consider the following circumstances. Selig was protected by Washington courts in any action he may have brought on his contract with Bateman. Selig knowingly and specifically dealt with Washington residents, thus satisfying the minimum contacts rule. To require the multiple purchasers involved in this action to travel to Indiana would involve a disproportionate expense as compared to the expense incurred by Selig in defending in Washington. Selig's codefendant, Bateman, has been sued in Washington and the joining of Selig will serve to prevent a multiplicity of suits. Selig solicited Washington business and derived substantial profits from Washington residents. Lastly, it is in the interest of Washington courts to protect its citizens against fraud. For similar criteria, *see Nixon v. Cohn, supra;* and *Callahan v. Keystone Fireworks Mfg. Co., supra.* We hold that to allow in personam jurisdiction over petitioners under RCW 4.28.185 does not offend traditional notions of fair play and substantial justice.

■ Finally, petitioner Ben Selig contends that his association with his brother, Stanley, in real estate ventures was terminated in 1959 and that he has no connection with or knowledge of any of the transactions with which this action is concerned. This is a matter which may ultimately be determined in the trial court. The record before us, which was before the trial court, contains strong prima facie evidence to the contrary from which the trial court could have concluded that Ben Selig was indeed a partner. We refer to correspondence with Bateman in which Ben Selig's name appeared in the letterhead. Even more significant is the brochure or booklet supplied to Bateman. One section of this booklet is devoted to a description of the business activities of the "Selig Brothers". The education, business experience and qualifications of both Ben and Stanley Selig are set out. It would be difficult for anyone reading this brochure to escape the conclusion that he was dealing with a partnership. Indeed, the brochure is intended to convey that impression. For purposes of jurisdic-

tion under the long-arm statute we hold that the trial court ruled correctly when it refused to dismiss the action against Ben Selig.

The ruling of the trial court is affirmed in all respects.

HUNTER, C. J., HILL, HALE, and NEILL, JJ., concur.