[No. 708-3.  Division Three.  February 28, 1973.]

QUAD METALS CORP., *Petitioner*, v. EL CAPITAN MERCURY COMPANY *et al., Respondents.*

*Wm. F. Nielsen* and *Edward A. Dawson* (of *Dawson & Borst*), for petitioner.

*Paine, Lowe, Coffin, Herman & O'Kelly* (*Edwin R. Roberts*, of counsel) and *Fredrickson, Maxey, Bell & Allison, P.S.* (*Otto M. Allison, Jr.*, of counsel), for respondents.

GREEN, C.J.—One question is presented by way of writ of certiorari:

Did the trial court err when it quashed service of process under the long-arm statute and dismissed plain-

tiff's action against defendants, Gordon Smith, Lindsay Smith, Keith Smith, Howard Reed and Virginia Mc-Cullough, individually, and as partners of El Capitan Mercury Co., and C. Hyde Lewis, who were all residents of the states of California and Nevada, for lack of jurisdiction?

We find the service was properly quashed and the action dismissed.

Plaintiff, Quad Metals Corp., a Washington corporation, has its principal place of business in Spokane. El Capitan Mercury Co. is a limited partnership with its principal place of business in Inyo County, California. El Capitan owned a number of mining claims in Inyo County. It is clear that the El Capitan partnership owned no property in Washington, conducted no business in this state, and had no contacts in this state except as relate to the present controversy. Quad Metals brought this action against the defendants to recover damages for alleged fraudulent misrepresentation of facts which led them to lease El Capitan's mining properties in California.

The question of jurisdiction under the long-arm statute must be considered in light of the following circumstances. In the spring of 1969, the El Capitan mining properties in Inyo County, California were discussed between Quad Metals and California resident, C. Hyde Lewis. The record does not disclose where the first discussion took place. It is clear, however, that Joseph R. Fay, plaintiff's president, along with its corporate attorney, met with representatives of El Capitan in California to investigate the mining properties. Thereafter, while in California, they entered into negotiations for a lease of the El Capitan Inyo County mine. A proposed lease was prepared and signed by El Capitan and delivered to Fay in California, together with a prospectus containing a history of the mine, financial information, maps and newspaper clippings. It is contended that Lewis told Fay and Quad Metals' attorney that they should act quickly because the properties contained the most substantial cinnabar deposit he had ever seen and that others were

interested. Fay and the attorney returned to Spokane with the proposed lease agreement and other documents.

On March 29, 1969, the lease proposal and prospectus was presented to Quad Metals' board of directors. Some of the directors had previously discussed the proposal in telephone conversations between Spokane and California. The board voted to authorize execution of the lease which was later approved at a stockholders' meeting. Thereafter, Quad Metals took over the operation of the California properties.

The gist of the action against El Capitan is that the mining properties were not as represented and as a result Quad Metals sustained substantial losses. Quad Metals seeks to bring its action in this state under RCW 4.28.185 and contends the trial court erred when it dismissed its complaint as to the California defendants.

RCW 4.28.185 provides in pertinent part:

> (1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:
>
>   (a) The transaction of any business within this state;
>   (b) The commission of a tortious act within this state;
>
> . . .
>
> (3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

In applying this statute, the court in *Tyee Constr. Co. v. Dulien Steel Prods., Inc.*, 62 Wn.2d 106, 115, 381 P.2d 245 (1963), said:

> As may be noted from the foregoing quotations, the broadened concept of in personam jurisdiction over non-resident defendants and foreign corporations, in cases falling within the scope of RCW 4.28.185 (1) (a), does not readily lend itself to the promulgation of an infallible formula automatically determinative of every case. As appropriately stated in *Perkins v. Benquet Consol. Mining Co., supra,* (p. 445) [342 U.S. 437, 96 L. Ed. 485, 72 S.

Ct. 413 (1952)], "The amount and kind of activities which must be carried on . . . in the state of the forum so as to make it reasonable and just to subject . . . to the jurisdiction of that state are to be determined in each case."

Against the backdrop of these decisions, and within the framework of our statute, it would appear reasonable however, to conclude that there are three basic factors which must coincide if jurisdiction is to be entertained. Such would appear to be: (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. [Footnotes omitted.]

The foregoing criteria in *Tyee* was approved in *Smith v. York Food Mach. Co.*, 81 Wn.2d 719, 721, 504 P.2d 782 (1972), with these added comments:

The first criterion outlines the statutory requirements of RCW 4.28.185(1)(a) and (b). The second expresses the limitations set forth in RCW 4.28.185(1) and (3). The third criterion is not based upon the statute but enumerates several nonexclusive factual considerations to aid in determining whether the due process right of foreign corporations or nonresident defendants precludes the assumption of jurisdiction. *Callahan v. Keystone Fireworks Mfg. Co.*, 72 Wn.2d 823, 435 P.2d 626 (1967).

Where damage results from a defendant's negligence, the injury which occurs in this state is an inseparable part of the "tortious act" as that term is used in the statute. *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.*, 66 Wn.2d 469, 471, 403 P.2d 351 (1965); *Thiry v. Atlantic Monthly Co.*, 74 Wn.2d 679, 445 P.2d 1012 (1968); *see also Nixon v. Cohn*, 62 Wn.2d 987, 385 P.2d 305 (1963).

It is observed that in every case involving products liability where the long arm of RCW 4.28.185 has been ex-

tended to embrace a nonresident defendant, such defendant was engaged in manufacturing or selling an alleged defective product that was placed in the stream of commerce in the ordinary course of business, found its way into this state, and injured plaintiff. *Nixon v. Cohn,* 62 Wn.2d 987, 385 P.2d 305 (1963); *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.,* 66 Wn.2d 469, 403 P.2d 351 (1965); *Quigley v. Spano Crane Sales & Serv., Inc.,* 70 Wn.2d 198, 422 P.2d 512 (1967); *Deutsch v. West Coast Mach. Co.,* 80 Wn.2d 707, 497 P.2d 1311 (1972); and *Omstead v. Brader Heaters, Inc.,* 80 Wn.2d 720, 497 P.2d 1310 (1972); *Smith v. York Food Mach. Co., supra.* With the exception of Omstead, the nonresident defendant in each of these cases had solicited business in this state directly or indirectly by advertising or other medium. In other cases where the plaintiff's claim rested upon a service to be performed, rather than the sale of a product, the nonresident defendant advertised and solicited sales of those services to the general public, including residents of this state, and utilized telephone and mail to consummate the transaction. *Griffiths & Sprague Stevedoring Co. v. Bayly, Martin & Fay, Inc.,* 71 Wn.2d 679, 430 P.2d 600 (1967); *Bowen v. Bateman,* 76 Wn.2d 567, 458 P.2d 269 (1969). The transmittal into this state of magazines for delivery to subscribers and newsstands for resale brings the publisher within the statute for purposes of a libel action. *Thiry v. Atlantic Monthly Co.,* 74 Wn.2d 679, 445 P.2d 1012 (1968); *see State v. Reader's Digest Ass'n,* 81 Wn.2d 259, 501 P.2d 290 (1972).

Except in rare cases, *Oliver v. American Motors Corp.,* 70 Wn.2d 875, 425 P.2d 647 (1967); *Tyee Constr. Co. v. Dulien Steel Prods., Inc., supra,* the long-arm statute has been applied to an ever-widening range of defendants. However,

> [I]t is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See *Vanderbilt v. Vanderbilt,* 354 U.S. 416, 418. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the

power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the "minimal contacts" with that State that are a prerequisite to its exercise of power over him.

*Hanson v. Denckla*, 357 U.S. 235, 251, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958). In our view, to apply the long-arm statute in the instant case will result in the demise of all restrictions on the in personam jurisdiction of our state court over transactions between residents of this state and other states.

In the instant proceeding, El Capitan and Quad Metals negotiated a lease of California property. These negotiations all occurred in California. El Capitan sent no representative into this state to conclude the transaction. The only activity that is claimed to have taken place in this state were telephone conversations between California and Washington, the bringing in of a brochure from California by Quad Metals, the act of approval and execution of the lease by officers of Quad Metals in reliance on the brochures and statements of Quad Metals representatives, and the subsequent claimed losses by Quad Metals in the operation of the mine which affected its bank accounts in this state. This activity is incidental to a transaction initiated and for all practical purposes concluded in California involving California property. The subject matter of the transaction is not in Washington, but in California. El Capitan was not in the business of selling mining leases; rather, the transaction was an isolated one between two private parties. We do not believe this type of activity results in such minimum contact as to constitute the transaction of business in this state by El Capitan. The injury and damage sustained by Quad Metals occurred in the operation of the mine in California. The fact that it had an office in this state or used funds from its bank accounts in Washington to operate its California lease does not in our judgment bring the injury into this state under theory of the *Nixon*

or *Golden Gate* cases as an inseparable part of the alleged tort, fraud.

Further, the issue of the alleged misrepresentation and the damages resulting therefrom depend upon evidence relating to the mine located in California. To find jurisdiction under the facts of this case offends our traditional notions of fair play and substantial justice.

The order of dismissal is affirmed.

MUNSON and McINTURFF, JJ., concur.