REEDER FLYING SERVICE, a Corpora-
tion, and Kenneth Hepner, Appellants
(Defendants below),

v.

Ruel Lester CROMPTON, Appellee
(Plaintiff below).

No. 3754.

Supreme Court of Wyoming.

June 4, 1970.

E. J. Herschler, Kemmerer, for appel-
lants.

Harry L. Harris, Evanston, for appel-
lee.

Before GRAY, C. J., and McINTYRE,
PARKER, and McEWAN, JJ.

Mr. Justice McEWAN delivered the
opinion of the court.

On June 14, 1965, defendant Hepner, an
employee of defendant Reeder Flying Serv-
ice, was piloting an airplane over the
lands of the plaintiff located two miles
north of Evanston, Uinta County, Wyo-
ming. He was forced to jettison a quanti-
ty of a chemical commonly known as 2, 4–D.
The chemical settled on an area of ap-
proximately 22 acres of alfalfa land and
upon 34 acres of brome grass and clover
hay. The spray killed or damaged the al-
falfa and clover.

Plaintiff filed his complaint alleging that
defendants negligently and carelessly spray-
ed 2, 4–D upon the crops, trees, vegetation,
bushes and lands belonging to the plain-
tiff and, as a direct and proximate result,
plaintiff was damaged in the sum of $12,-
000. The defendants answered and denied
the plaintiff's allegation. The matter was
tried to the court, sitting without a jury.
The trial court found in favor of the plain-
tiff and against the defendants, and that
the plaintiff suffered damages amounting

to $6,375, and awarded judgment accordingly.

The defendants in their appeal stated that they do not "raise any question as to the finding of liability against them, but * * * do question the amount of damages awarded to the plaintiff herein."

The defendants argued:

(1) That plaintiff's evidence failed to afford a reasonable basis for measuring his loss, and that the judgment entered by the trial court awarding such damages could have only been based upon speculation, conjecture or surmise; and

(2) That the admission by the trial court, over objection, of the testimony of the witness, J. Robert Hamblin, as to the diminution in value of the alfalfa, brome and clover lands constituted prejudicial error.

At the trial it was determined that on June 14, 1965 the defendant Hepner was flying an airplane over the lands of the plaintiff and that he jettisoned a quantity of a chemical commonly known as 2, 4–D. The chemical settled on an area comprising approximately 22 acres upon which the plaintiff was raising alfalfa hay, and also settled on four fields upon which the plaintiff was raising brome grass and clover hay, and which comprised a total of 34 acres. It was determined that the chemical spray killed the alfalfa and clover. At the time of damage or destruction of the crops they had not been harvested. The first cutting of alfalfa hay would have been made about July 1st, and the brome and clover hay would have been harvested about August 1st. The plaintiff had alleged that the spray had also killed some willows, trees and shrubs, but apparently he abandoned such claim, and the entire matter resolved itself as to the amount of damages the plaintiff should recover for the loss of his hay crop and diminution in value of the lands. There was testimony given that the alfalfa hay lands would produce from 5 to 6½ tons per acre. The county agent testified that the average yield per acre in Uinta County was approximately

three tons per acre. All of this evidence related to both the first and second cuttings. The plaintiff testified that there was one acre of land in the alfalfa field that was not damaged, and that in the year 1965 he recovered 6½ tons from both cuttings on this particular acre. The plaintiff testified, without objection, that the alfalfa crop on the 22 acres damaged would have matured in 1965 had it not been damaged by the spray. Thus the 22 acres that were damaged would have produced the same as the one acre that was not damaged, and the plaintiff would have harvested 143 tons of hay from the said 22 acres. He did harvest 26 tons of hay from the damaged 22 acres, but he testified that its feed value was "zero"; that there were no leaves on it; there was nothing to it; and it crumbled like dust. Plaintiff testified that on the other fields consisting of 34 acres where the clover was killed the yield for the 1965 season was reduced by one ton per acre. The plaintiff testified that due to this loss of hay he was forced to purchase hay in the winter of 1965 for which he paid $17 to $22 per ton, and that the price that he paid averaged $20 per ton. He testified that there was no alfalfa hay for sale in the immediate area and that he was forced to purchase hay from the Salt Lake Valley area, but that its quality was very, very poor. There was testimony that the alfalfa lands, prior to the spraying, had a value of $350 per acre, and that subsequent to the damage the said lands had a fair market value of $175 per acre. There was also testimony that the brome and clover lands prior to the spraying had a fair market value of $175 per acre, and that after the clover was killed by the spray the said lands had a market value of $125 per acre.

No testimony was introduced by the defendants in an effort to rebut the alleged negligence of the defendants as to the spraying, and the only evidence, introduced by the defendants, was two exhibits. One exhibit was a pamphlet entitled "Wyoming Farm and Ranch Land Prices" compiled September 1965, with reference to a sec-

tion entitled "Market Value Per Acre Reported for Irrigated Cropland." Defendants' exhibit 2 was a pamphlet entitled "Wyoming Agricultural Statistics and Information 1959–1960," with particular reference being made to the sections showing the average yield per acre of hay and alfalfa hay. The exhibits were admitted for limited purposes and the defendants rested.

The defendants cited 21 Am.Jur.2d, Crops, § 80, p. 666, wherein it is stated:

"* * * In the case of injury to, or destruction of, both crop and roots, it has been held that the measure of damages is the value of the crop or grass as it stood upon the ground plus the difference in the value of the land before and after the destruction, not taking into account the value of the grass or crop."

A footnote refers to Annot., 175 A.L.R. 157, in which it is stated at 205, § 37:

"In the light of the cases cited * * * it would seem that for destruction of perennial plants and a growing crop thereon, the measure of damages ordinarily applied would be the value of the crop at the time and place of destruction, plus the difference in the value of the land immediately before and immediately after the destruction."

The defendants conceded that there is authority that damages may be properly determined by this method, and it appears that this is the theory upon which plaintiff proceeded.

■■ Plaintiff was entitled to damages for the value of the crop as it stood upon the ground at the time and place of destruction or damage. But the defendants contended that there was no evidence of either the amount or the value of the crops at the time of destruction or damage. If there was no showing as to the amount of hay at the time of destruction or damage, then, of course, no value could be placed thereon. The plaintiff failed to provide the trial court with any evidence as

to the amount of hay there was at the time of destruction, and it necessarily follows that if the quantity was unknown, no value could be placed upon it. There is no doubt that the plaintiff suffered damages from the loss of crops. But there must be evidence from which the amount of damages may be determined. Chicago & N. W. Ry. Co. v. Ott, 33 Wyo. 200, 237 P. 238, 242.

The defendants further argued that the only evidence as to the before and after values of the lands was the testimony of J. Robert Hamblin and that prejudicial error was committed by the trial court in receiving his testimony.

■ There was ample evidence upon which the court could have found that diminution of the market value of the 22 acres of alfalfa lands was $175 per acre, and the diminution of the market value of the 34 acres of brome and clover lands was $50 per acre, and the plaintiff, therefore, suffered damages in the sum of $5,550.

The judgment of the trial court should be affirmed as to the award of damages for diminution in the value of the lands, but modified to exclude any award for the value of crops damaged or destroyed.

## DIMINUTION IN THE VALUE OF LAND

The plaintiff's witness, J. Robert Hamblin, had been a resident of Uinta County, Wyoming since 1934, a real estate broker for 26 years, a Wyoming licensed real estate broker and a bonded abstractor. He testified that the test to obtain a real estate broker's license consisted of questions about appraisals, selling and buying land. He had appraised farms, ranches, houses and commercial buildings for the government, the county, individuals and bankers, and estimated that he had made 1,000 appraisals, and over the past years had made 50 appraisals of lands of the same general character of the plaintiff's lands in question, and had known the plaintiff's property since 1934.

Mr. Hamblin looked over the property in question to see if he could ascertain what damage had been done. He inspected the alfalfa field very thoroughly and "went over" the rest of the lands, being the alsike clover and the brome grass fields. His testimony was that he looked at what was destroyed and what wasn't destroyed. He knew the fair market value of the various types and classifications of agricultural lands located in the general vicinity of Evanston, Wyoming. This knowledge as to the value of various kinds of croplands, ranges and irrigated pastures was obtained from the records showing lands sold to a willing buyer by a willing seller.

### Alfalfa Lands

There were very few sales of alfalfa lands as such because usually when alfalfa lands are sold they are not sold separately but are sold with the rest of the ranch, but in 1965 there were 4.67 acres of similar alfalfa lands sold by a willing seller to a willing buyer for $350 per acre, which lands were located three miles northwest of the lands in question. According to Mr. Hamblin, this was a very fair price and he thought any rancher or farmer would be glad to pay that amount for alfalfa lands. He further stated that if he were to try to sell the lands right now, " * * * the salability would be hampered due to the fact that it was infested with a poisonous deal and even though it didn't hurt the land, the buyer thinks that it might hurt the land. * * * The salability is decreased farther than the actual value." In his opinion the value of alfalfa lands was $175 per acre after the damage occurred in 1965. There was no objection to Mr. Hamblin's qualifications, and no objection was made to his testimony concerning the values of the "alfalfa lands."

Upon cross-examination Mr. Hamblin testified that he knew of only one separate sale of alfalfa lands in the area, that being the 4.67 acre tract which was sold to the city of Evanston for the purpose of extending its airport runway. He testi-

fied that he had not based his opinion as to the value of alfalfa lands solely on the sale to the city of Evanston. He stated that a bulletin from the University of Wyoming indicated that alfalfa lands were worth $350 per acre, and that the said bulletin gave him more knowledge as to land values.

The defendants then moved that " * * * Mr. Hamblin's estimate and his opinion as to the value of the alfalfa in this particular area be stricken for the reason that the basis upon which he testified would certainly not be representative; that this land is now being used for airport purposes; there are other factors that must be taken into consideration, condemnation, the question of willingness of buyers and sellers and certainly this is not a normal sale and I would think that it would not apply in this situation * * *." The objection raised by the defendants' motion went to the testimony of the witness as to the one sale to the city of Evanston. The witness had not based his opinion solely on the sale to the city of Evanston, but used this sale as one factor in arriving at his opinion.

■ There was no evidence that the city acquired the lands under condemnation or even threat of condemnation. The witness testified that the sale was by a willing buyer and a willing seller, and there was no evidence to the contrary. The only authorities cited by the defendants in support of their contention that prejudicial error was committed by the trial court in admitting the testimony of the witness are cases dealing with condemnation or threat of litigation. There was no evidence of condemnation or threat of condemnation or litigation, and the cases are not in point. We are cited to no authority, nor is any convincing argument made that the trial court's actions constituted prejudicial error, and we do not believe that any occurred.

### Brome and Clover Lands

The witness testified without objection that the fair market value of lands in the

area producing brome and clover hay and similar types of grass was $175 per acre. Based upon his experience as a real estate salesman and broker, the brome and clover lands, after the clover was killed, were reduced to pasture. On voir dire the witness testified that in his opinion there was not enough clover left in the fields that were damaged to produce a paying hay crop. Upon cross-examination he again testified that because of the damage the said fields would not produce a paying hay crop, and therefore the highest and best use would be as pasture. He knew of sales of irrigated pastures in the area, which pastures were comparable to the plaintiff's after the damage. In his opinion the salability of these lands was somewhat affected because they were damaged by the spray. The value of the said 34 acres, after the damage was, in his opinion, $125 per acre. The opinion of the witness as to the value of the lands before the damage and the value of irrigated pasture was not objected to by the defendants.

■ The defendants objected that there was no proper foundation for the witness' opinion of the aftervalue of said 34 acres because his opinion was based upon his belief that the said lands had, because of damage, been reduced to irrigated pasture.

The defendants did not challenge the witness' qualifications, and the record showed that he had extensive training and experience in appraisal work. The witness was not challenged on his inspection of plaintiff's lands or the irrigated pasture lands. His investigation appeared to have been rather extensive, and the trial court was warranted in determining that the witness had sufficient knowledge of the properties to admit his opinion that the lands, after the damage, had been reduced to irrigated pasture. Again, we are given no authority or convincing arguments for defendants' contentions. This court has said on many occasions that we take a liberal view in the matter of foundation for opinion evidence of values. State High-

way Commission v. Newton, Wyo., 395 P. 2d 606, 608.

## LOSS OF CROPS

The plaintiff provided no evidence as to the value of brome and clover hay, and the trial court properly could not have made an award for the destruction or diminution of the brome and clover crop. This leaves only the question of damages for the loss of the alfalfa hay crop.

The plaintiff's evidence showed that he usually made his first cutting of alfalfa about July 1st. The damage to the crop occurred June 15th. The defendants conceded that because the crop was so close to maturity the plaintiff could properly claim damages for the value of the hay he would have received on the first cutting, but objected to the allowance of damages for any subsequent crops.

Plaintiff made no showing of the amount of alfalfa hay he would have recovered from the first cutting had the damage not occurred. The plaintiff testified as to what the yield had been on the 22 acres during the past years; and what the yield was in 1965 on the one acre on which the alfalfa was not destroyed. There was evidence as to the average yield of alfalfa in the area. But there was no testimony or evidence as to what the yield would have been had the alfalfa been harvested just before the destruction, or even what the yield would have been on the first cutting. All estimates were for the yield of both the first and second cuttings.

■ Under the theory on which plaintiff proceeded, he is entitled at most to damages for the value of the crop at the time of the first cutting only, and not for damages for the value of the subsequent crop at the time of the second cutting. Since there was no evidence as to the amount of alfalfa hay there was at the time of destruction it matters not that the plaintiff made a showing of what price he had to pay for alfalfa hay. Even if his showing of the value per ton of alfalfa hay which he purchased was proper,

there was no way the trial court could equate it to the plaintiff's loss since there was no showing of the quantity of hay damaged or destroyed. While the objective in awarding damages is to compensate the injured party for his loss, such damages, while they may not always be calculated with absolute certainty, must be susceptible of ascertainment with a reasonable degree of certainty. Blakeman v. Gopp, Wyo., 364 P.2d 986, 991.

The judgment of the trial court must be modified so that the total damages awarded the plaintiff shall be the sum of $5,550, together with costs of $132.30. The trial court is therefore instructed to so modify the judgment.

Affirmed as modified.