**ALBIN ELEVATOR COMPANY,**
**Appellant (Defendant),**

v.

**Mike PAVLICA, Appellee (Plaintiff).**

No. 5651.

Supreme Court of Wyoming.

July 26, 1982.

Henry F. Bailey, Jr., and Richard F. Pickett, Loomis, Lazear, Wilson & Pickett, Cheyenne, for appellant.

William A. Riner, Cheyenne, for appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROSE, Chief Justice.

Plaintiff-appellee Pavlica brought suit against defendant-appellant Albin Elevator Company charging negligence and breach of express warranty.[1] In his complaint, Mr.

---

1. Express warranties of a seller or manufacturer are governed by § 34–21–230, W.S.1977, which provides:

"(a) Express warranties by the seller are created as follows:

"(i) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise;

"(ii) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description;

"(iii) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

"(b) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commen-

Pavlica alleged that Albin Elevator Company had warranted to sell him "spring wheat" but had in fact sold him "winter wheat" which did not produce a crop. As a result, Pavlica prayed that the court award him $9,200 for expenses incurred in attempting to produce a crop, $24,400 in lost profits, and that he be relieved from reimbursing Albin Elevator for the $866 purchase price. Trial was to the court and the plaintiff-appellee was awarded damages in the sum of $10,371 for lost profits and Albin Elevator's counterclaim for the purchase price of the wheat was denied. Mr. Pavlica took no exception to the award, nor has he presented any argument to us except that the trial judge acted properly in awarding him $10,371 for lost profits. He does not, for example, ask for the expenses incurred in purchasing the seed or raising the crop and so we are bound to assume that his expenses are not the subject of this appeal.

In this appeal, the elevator company is challenging the trial court's finding that there had been a breach of an express warranty, and it also challenges the court's award of damages for lost profits. The issues raised by appellant are framed in the following manner:

"1. Whether or not Defendant's express warranty that wheat sold to Plaintiff on May 7, 1980, was 'spring wheat' was tantamount to a warranty that the wheat was also 'spring wheat *seed*' and suitable for planting.

"2. Whether or not Plaintiff's proof of damages was so speculative and conjectural that the Court erred in awarding Plaintiff damages for lost profits in the amount of $10,371.00."

We will affirm with respect to the finding that appellant breached an express warranty and reverse the trial court's award of damages for lost profits.

dation of the goods does not create a warranty."

**2.** According to the expert's testimony, the distinctions between "winter" versus "spring" wheat is important because "winter wheat" requires a vernalization period of a number of

## FACTS

Plaintiff-appellee, Mike Pavlica, has operated his farm near Burns since 1974. In May of 1980 he called Albin Elevator Company to inquire if they had some "spring wheat" which he could plant that spring and was informed by a company representative that "spring wheat" was available. On May 7, 1980, Pavlica took delivery of 216.3 bushels of "spring wheat" from Albin Elevator and this transaction was verified by a sales ticket signed by one of Albin's employees, which recited that "spring wheat" had been delivered.

The appellee planted the seeds and within a few weeks approximately 99% of them germinated. Mr. Pavlica continued watering the crop and he sprayed the field with a chemical substance in order to control weed growth. The wheat plants, however, did not produce stalks and remained in a green, leafy state.

The appellee solicited the advice of Dr. Bernard Kolp of the University of Wyoming who traveled to the farm and advised that the plants had characteristics of "winter wheat" rather than "spring wheat."[2] He recommended various procedures which Pavlica could follow which, he suggested, might insure the production of a crop. These recommendations were followed, but a harvestable crop was never produced, although Mr. Pavlica did manage to lease the field for grazing purposes for $600.

On the basis of these facts, appellee brought the present action seeking damages for breach of express warranty.

## DID APPELLANT BREACH AN EXPRESS WARRANTY?

As noted previously, § 34–21–230, W.S. 1977 (UCC § 2–313), governs claims for express warranties in Wyoming. See: § 34–21–230, supra n.1. A portion of that statute provides that any description of the

weeks of temperatures below 41 degrees before stalks will be produced. Absence of such period will allow the seedlings to produce only green foliage. It is undisputed that the temperature levels never got low enough for this reaction after plaintiff had planted his field.

goods which the parties make a basis of the bargain creates an express warranty, and the goods sold must conform to the description. Section 34–21–230(a)(ii), supra n.1. Also, the statute provides that the seller need not specifically use the words "warrant" or "guarantee" or even intend to expressly warrant in order for the court to determine that a warranty was in fact made. Section 34–21–230(b), supra n.1. Thus, it is necessary to consider whether or not the agreement between the parties evidences any description or promise made by Albin Elevator which became a basis of the bargain. *Shepard v. Top Hat Land & Cattle Co.*, Wyo., 560 P.2d 730 (1977). Secondly, if plaintiff-appellee is able to demonstrate the existence of an express warranty, he must then prove that the warranty was breached and that he was damaged as a result. *Kure v. Chevrolet Motor Division*, Wyo., 581 P.2d 603, 608 (1978); *Colorado Serum Company v. Arp*, Wyo., 504 P.2d 801, 805 (1972).

■ Given the facts surrounding the sale of the wheat seed, we conclude that the trial court acted properly in deciding that Albin Elevator had expressly warranted to Mike Pavlica that he was purchasing "spring wheat." The description is plainly reflected in the sales ticket, signed by one of appellant's employees, where the recitation approves to the effect that Albin delivered 216.3 bushels of "spring wheat" to appellee. According to the testimony, Albin was informed by Pavlica prior to the sale that he desired "spring wheat" for planting purposes. These facts establish that Albin expressly warranted to sell Pavlica "spring wheat" and such assurances were made a basis of the bargain. An express warranty was given by Albin under § 34–21–230(a)(ii), W.S.1977.

It further appears that plaintiff-appellee presented substantial uncontradicted evidence to the effect that the express warranty was breached. At trial, Dr. Kolp, plaintiff-appellee's witness, testified that, in his opinion, the plants he observed on the farm were "winter wheat" sprouts and not "spring wheat." Thus, the evidence reveals

that Pavlica thought he was buying and planting "spring wheat" when in fact he was sold "winter wheat" seeds. It was also not disputed that "winter wheat" seeds would not produce a crop at the time plaintiff-appellee planted them. Clearly, Albin did not sell plaintiff what it had warranted to sell. Considering the evidence, Albin's argument that it did not warrant to sell Pavlica "spring wheat seed" but only "spring wheat" requires little discussion. We say this because the facts reflect that Albin delivered "winter wheat" rather than "spring wheat" and that fact in itself was a sufficient basis for the trial court to conclude that Albin had breached the warranty.

## DID PLAINTIFF–APPELLEE PROVE HE WAS DAMAGED BY THE BREACH?

In light of our conclusion that there was ample evidence to sustain the finding of a breach of an express warranty, the only question remaining concerns proof of damages.

In cases where a buyer seeks to recover damages for a breach of warranty, § 34–21–293(b), W.S.1977 (UCC § 2–714) instructs:

"(b) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."

Subsection (c) of § 34–21–293, W.S.1977, also allows the buyer, in a proper case, to recover any consequential and incidental damages. The recovery of incidental and consequential damages for breach of warranty is governed by § 34–21–294, W.S.1977 (UCC § 2–715). That section provides:

"(a) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or

commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach. "(b) Consequential damages resulting from the seller's breach include:

"(i) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

"(ii) Injury to person or property proximately resulting from any breach of warranty."

In this case, plaintiff-appellee sought recovery for his lost profits which, he argued, resulted as a consequence of the breach.

The trial court ascertained the loss-of-profit figure of $10,371 by assuming a " * * * gross return of Forty (40) bushels per acre on One Hundred Forty (140) acres, each bushel having a dollar value of Four Dollars ($4.00) for a total of Twenty-Two Thousand Four Hundred Dollars ($22,400.00) from which should be subtracted the following expenses incurred by Plaintiff in connection with the crop: Eight Hundred Sixty-Six Dollars ($866.00) for seed grain, Nine Thousand Twenty-Three Dollars ($9,023.00) for electric power to operate the sprinkler system and water well, land preparation, planting, fertilizing and post emergent herbicide spraying, and One Thousand Five Hundred Forty Dollars ($1,540.00) for harvesting * * *; The further sum of Six Hundred Dollars ($600.00) should also be deducted as the sum received by Plaintiff for use of the vegetation actually produced as cattle grazing; * * *" (From the judgment of the court.)

The problem that we have with this calculation is the court's finding that the plaintiff-appellee would have produced 40 bushels of wheat per acre.

▮ Although we have never specifically held that lost profits can be recovered for breach of warranty, the general rule is that such profits are a proper element of damages which can be recovered for breach

of warranty under the Uniform Commercial Code. White and Summers, Uniform Commercial Code § 10–4, p. 391 (2nd Ed. 1980). See also: *White v. Oregon Horticultural Supply,* 40 Or.App. 323, 594 P.2d 1321 (1979); *Clark v. International Harvester Co.,* 99 Idaho 326, 581 P.2d 784 (1978); *Golden Gate Hop Ranch, Inc. v. Velsicol Chemical Corp.,* 66 Wash.2d 469, 403 P.2d 351 (1965). However, the rule allowing recovery for lost profits requires that the plaintiff prove such loss with a reasonable degree of certainty through use of the best evidence available. *R. E. B., Inc. v. Ralston Purina Company,* 525 F.2d 749 (10th Cir. 1975); *Lundgren v. Whitney's, Inc.,* 94 Wash.2d 91, 614 P.2d 1272 (1980). We discussed the necessity of proving damages for lost profits with "reasonable certainty" in *Wyoming Bancorporation v. Bonham,* Wyo., 563 P.2d 1382 (1977). There we said:

"The evidence necessary to establish lost future profits with reasonable certainty depends, then, upon the circumstances of the particular case. Notes: *Requirements of Certainty of Proof of Lost Profits,* 64 Harv.L.Rev. 317, 319 (1950). A court should approach each case in an individual manner and require the claimant to furnish the best proof available as to amount of loss. *Vickers v. Wichita State University, Wichita,* supra, [213 Kan. 614] 518 P.2d [512] at 517; and McCormick, Law of Damages, § 29 (1935). Absolute certainty in proving loss of future profits is not required." 563 P.2d at 1385, 1386.

According to these rules, plaintiff-appellee could recover his lost profits under § 34–21–294(b), as long as he presented sufficient evidence to enable the trial court to determine his profit loss with a "reasonable degree of certainty." Wyoming Bancorporation, supra. In this case, Pavlica could claim damages for lost profits because Albin Elevator is chargeable with the knowledge that if it delivered "winter wheat" in the month of May Mike Pavlica could not produce a crop. Section 34–21–294(b)(i), supra.

We call attention to the fact that, in this appeal, we are not dealing with a question involving damages recoverable for loss of a growing crop. Under the "growing crop" theory of damages a plaintiff can recover damages up to the amount of the value of the crop as it stood in the ground at the time it was destroyed, and for any loss in the diminution of the value of the land. We discussed the application of this theory of damages in *Reeder Flying Service v. Crompton*, Wyo., 470 P.2d 281 (1970), where we upheld the award of damages for diminution in the value of the plaintiff's lands due to the negligent spraying of the chemical by defendants but held that plaintiff had failed to establish the value of the hay at the time it was destroyed by the chemical. The rule discussed in that case holds that, in seeking recovery for damage to a *growing crop*, the plaintiff must establish with a reasonable degree of certainty the value of the crop at the time it was injured or destroyed, and this is the prevailing viewpoint. *Black v. Ellithorp*, Okl., 382 P.2d 23 (1963); *Wood v. Woodcock*, 276 Or. 49, 554 P.2d 151 (1976); *Frankfort Oil Co. v. Abrams*, 159 Colo. 535, 413 P.2d 190 (1966). It is important to point out that, in the case at bar, plaintiff-appellee is seeking to recover for lost profits arising out of his failure to produce any spring wheat crop because appellants did not sell him spring wheat seed. In other words, the facts establish that plaintiff is not attempting to recover and could not recover damages under the "growing crops" theory since he is claiming to have suffered damage by reason of the fact that he did not produce a crop at all. In such circumstances there can be no recovery for damages to a growing crop, because there was no crop growing at the time the injury occurred since, in this instance, the injury occurred at the time the seed was sold. We add this discussion to insure that no confusion results, and to point out that we are not here concerned with a situation like that discussed in *Reeder Flying Services v. Crompton*, supra.

With the above discussion in mind, the only question left for resolution concerns whether or not the plaintiff-appellee's evidence of lost profits was sufficient to allow the trial court to award them. We hold that it was not.

In our judgment, the rule of damages for lost profit must, in this case, be viewed in the context that the wheat crop in question was in the nature of a new or contemplated business. We suggest this because the plaintiff did not have extensive experience in planting spring wheat on his farm [3] and also because the farmer's income from each and every planting is dependent upon so many variables that every year's experience takes on the characteristics of a new venture. This does not mean that loss of future profits are not provable (see *Shelver v. Simonsen*, 369 F.Supp. 4 (1973), but it does mean that that proof is very difficult. Where, for example, in a cattle-raising venture, the plaintiff sought loss of profits, the Federal District Court of North Dakota, Northeastern Division, said:

"* * * I conclude that, while in theory, loss of profit is provable as an item of damage, in fact, the element of future profit is usually so speculative that any evidence addressed to proving it will be subject to harsh scrutiny; and no verdict or finding of fact of loss of profit will be allowed to stand unless the proof is clear and unequivocal." 369 F.Supp. at 5–6.

In his attempt to prove damages for lost profits, plaintiff-appellee relied mostly upon the experience of a neighboring farmer, a Mr. Lawrence Anderson. This witness testified that his farm was located some three and one-half miles "as the crow flies" from Mike Pavlica's farm, and that he had grown many crops of wheat over the years. He testified that in 1980 he raised a crop of wheat that produced an average of 60 bushels per acre and sold for $4.20 to $4.30 a bushel. In his testimony he recounted that he had experienced no severe weather prob-

---

**3.** Mr. Pavlica had planted spring wheat on his farm only twice—once in 1975, and the 1980 planting which is in contest here.

lems and that he knew of none in the area, and Mr. Anderson said that he had an irrigation system similar to the one on the plaintiff-appellee's farm. On the basis of this evidence, and Dr. Kolp's testimony that yields can average some 20 to 25 bushels per acre below those experienced by Mr. Anderson, the trial judge awarded Pavlica damages for lost profits in the amount of $10,371.

All that Mr. Anderson's testimony proved was that *his* farm, located in the vicinity, experienced a successful return on a wheat crop. No testimony was ever elicited which connected Mr. Anderson's farming practices with Mike Pavlica's, nor was there any evidence concerning similar soil types, nutrients, or other conditions extant upon the Pavlica and Anderson farms. In fact, Mr. Anderson admitted that he had no knowledge about plaintiff-appellee's farming practices, soil conditions, or other variables associated with raising a profitable crop. He was only able to recount his own experience which was never sufficiently related or compared to Mike Pavlica's probable experience. Thus, although the plaintiff-appellee did not have to show that Mr. Anderson's yield and price were identical to what his would have been, it became his obligation to at least prove that Mr. Anderson's crop was produced under conditions similar to his and others in the vicinity so that the trial judge could make a reasonable estimate on the basis of the comparison. *Blackburn v. Carlson Seed Company*, Mo.App., 321 S.W.2d 520 (1959).

We are further of the opinion that in order for plaintiff-appellee to recover for lost profits it was incumbent upon him to provide the court with evidence supporting his claim that his farm was a profitable operation. The courts generally require some record of profits which allows the reasonable inference to be drawn that a profit would have been experienced but for the breach of the defendant. See *White v. Oregon Horticultural Supply*, supra. Plaintiff-appellee offered no records or other evidence of past yields even though he had apparently grown a crop of spring wheat on a prior occasion. Evidence establishing pri-

or profitable returns with other crops grown by appellant would have been relevant for purposes of proving that appellant's farming operation had been profitable before, and that, under the conditions then existing, he would expect it would have been profitable again except for the breach. *Golden Gate Hop Ranch, Inc. v. Velsicol Chemical Corp.*, supra.

We conclude then that it was incumbent upon the plaintiff-appellee to produce more than the testimony of a neighboring farmer as to what occurred on his farm. To allow the trial judge to arrive at a reasonable award, it was necessary that there be some evidence going to the similarities which existed between the farms, other than their location, in order for a reasonable comparison to be made. Here, we believe the evidence was deficient in this respect. The award of lost profits could only have been based on conjecture and speculation and must be reversed. Since the plaintiff-appellee failed to prove those damages, he is entitled to no recovery.

Affirmed in part and reversed in part.

RAPER, Justice, dissenting, in which THOMAS, Justice, joins.

I concur in that part of the majority opinion which affirms the district court in its finding that appellant breached an express warranty.

I dissent from that part of the court's opinion which denies appellant his lost profits and expenses. While the evidence of what appellee's 140 acres of irrigated ground would have produced is not overwhelming, it is as good as possible and sufficient to support the trial judge's finding that it would have potentially produced 40 bushels of wheat per acre, having a value of $4.00 per bushel for a total of $22,400.00.

I

The evidence was that appellee was an experienced farmer, having owned and operated his farm for some seven years. In addition, he did custom farming for others

in the area. On his own place the wheat was planted on ground irrigated from well water by a center-pivot sprinkling system. The evidence was that he followed good farmer-like practices with respect to this particular crop. There was no hail in the area that year. His expert witness in plant breeding and crop management from the University of Wyoming testified that the wheat "stands [in Pavlica's field] were good, I couldn't see any germination problems." Appellee testified that it was a "real fine stand" of wheat, even though lacking stalks and heads.

Lawrence Anderson, a neighboring farmer testified that, "the bushel yield in 1980 was a farmer's average of 60 bushel an acre." Appellee's expert witness testified that on a test circle (irrigated by sprinkler) in the Albin vicinity where the University of Wyoming worked with the farmers, different varieties of wheat varied as much as "25, 30 bushel difference between the top varieties and the bottom ones." He also testified that the area where the wheat is grown will affect production, one area may have an 80-bushel potential while another will have a potential of only 65 bushels per acre.

The appellant produced no evidence whatsoever to rebut the testimony as to crop yields introduced into evidence by appellee.

The objective and office of damages is to compensate for loss. While damages may not be calculable with absolute certainty, they should be susceptible of ascertainment with a reasonable degree of certainty; and, if there is evidence from which a reasonable estimate of money damages may be made, that is sufficient. The primary objective is to determine the amount of loss, applying whatever rule is best suited to that purpose. *Douglas Reservoirs Water Users Ass'n v. Cross*, Wyo., 569 P.2d 1280 (1977); *Wheatland Irrigation District v. McGuire*, Wyo., 562 P.2d 287 (1977).

The supreme court must assume that the evidence in favor of the successful party is true, leave out of consideration entirely evidence of the unsuccessful party that conflicts with it, and give the successful party every favorable inference which may reasonably and fairly be drawn from it. *Johnson v. Aetna Casualty and Surety Co. of Hartford, Conn.*, Wyo., 630 P.2d 514 (1981). The cases are so numerous on this point that it is fruitless to cite them. See, West's Wyoming Digest, Appeal and Error, Key Numbers 930(1) and 931(1). However, in the case before us, there was no conflicting evidence.

We should not substitute our view of the facts for that of the trial judge. The supreme court should not substitute its conclusions for the findings made by the trial judge. *Twing v. Schott*, 80 Wyo. 100, 338 P.2d 839 (1959). The evidence is capable of the finding that the "farmer's average" for the area in which both Anderson and appellee farm is about the same. What could be more certain than the unrefuted evidence that the average production in that area was 60 bushels per acre? The "test circle" in the same area indicates a low range of 25 to 30 bushels less than the top range of 65 to 80 bushels of spring wheat per acre, depending upon variety. In estimating damages, evidence of the value of natural crops of like kind in the same neighborhood is competent. *Smith v. Hicks*, infra. The 40 bushels of wheat per acre found by the trial court is within the range of the evidence. All that is required for a damages award is that there be a reasonable approximation by the trial court if within the limits of the evidence furnished. *Wyoming Wool Marketing Ass'n v. Woodruff*, Wyo., 372 P.2d 174, 3 A.L.R.3d 802 (1962). As indicated in that case, damages are sometimes not capable of ascertainment with mathematical exactitude. There are probably no two plots of earth in the world that have identical productive capability. Many other elements enter into farming: weather, soil, seed, availability of water, farming practices, etc., etc. The evidence points to the inevitable conclusion that an average crop would have been produced by appellee. The trial judge struck a medium between the highest of 65 to 80 bushels and 30 bushels less than that, finding appellee's

land would have produced 40 bushels per acre. Appellee had a good stand, but he did not ask for a particular variety of spring wheat when purchased. The evidence clearly shows appellee lost a crop; that is certain. There was certainty in the fact that he raised an irrigated crop, not dryland. There is certainty a crop will mature when irrigated. *Smith v. Hicks*, 14 N.M. 560, 98 P. 138 (1908); *United Verde Copper Co. v. Ralston*, 46 F.2d 1, 2 (9th Cir. 1931). There was no hail that year, so that uncertainty was not present.

With respect to the question of certainty, Corbin on Contracts § 1022, p. 142, states:

"It is not possible to state the precise degree of approach to certainty required for the recovery of profits as damages for breach of contract. If the mind of the court is certain that profits would have been made if there had been no breach by the defendant, there will be a greater degree of liberality in allowing the jury to bring in a verdict for the plaintiff, even though the amount of profits prevented is scarcely subject to proof at all. In this respect, at least, doubts will generally be resolved in favor of the party who has certainly been injured and against the party committing the breach. The trial court has a large amount of discretion in determining whether to submit the question of profits to the jury; and when it is so submitted, the jury will also have a large amount of discretion in determining the amount of its verdict. * * * "

The same would apply to the court as the fact finder.

It makes no material difference whether it was by fire or as a result of appellant's breach of warranty, the crop was lost; appellee is entitled to be compensated. See Corbin on Contracts § 1026, p. 165. He sets out another approach which could perhaps have been used in this case in arriving at damages for the loss of a crop arising from defective seed. He summarizes *White v. Miller*, 71 N.Y. 118 (1877):

"In a leading case, A bought seed of B warranted by the latter to be Bristol cabbage seed. The seed was in fact worthless mixed seed; but unaware of this, A set out more than a hundred thousand plants raised from the seed. The crop produced was good only for cattle. It seemed reasonably certain to the court that, had the seed been as warranted, A would have produced a much more valuable crop. A certainly had a right to damages measured by the full value of the Bristol cabbage seed that had been promised him. This could reasonably be regarded as a gain that would have resulted to him from full performance of the contract; but the court saw fit to look forward to more remote gains than that, and gave judgment to A for the value of a crop of Bristol cabbage that would ordinarily have been produced under the existing conditions less the value of the crop that was actually produced. The degree of uncertainty as to the crop that would have been produced was not so great as to prevent the court from giving judgment for damages measured thereby."

See also, *Randall v. Raper*, El. Bl. & El. 84, 120 Eng.Rep. 438 (1858), where Raper had sold barley seed to the plaintiff, but it turned out to be of an inferior quality. The English court held that the damage was the difference between the value of the crop of barley that should have been raised and the value of the inferior crop that was actually raised.

I have a deep concern for what appears to be a mistake in computing damages by the trial judge. His findings are inconsistent with the judgment he rendered. He found the expenses of raising and harvesting a crop of wheat to be $11,429.00 [1] and that if a crop of wheat had been produced, it would have brought $22,400.00, less $600.00 since the crop of leaves resulting

---

1. Itemized as follows:

| | | |
|---|---|---|
| $ | 866.00 | Seed (Bill not paid) |
| | 1,540.00 | Harvesting (Not paid but proven as a normal expense for acreage involved) |
| | 9,023.00 | Other Expenses (Power, land preparation, planting, fertilizing actually expended) |
| | $11,429.00 | |

from winter wheat seed planted in the spring actually was sold for forage.[2] He deducted the expenses from the resulting $21,800.00, and gave judgment for $10,371.00, the difference between $21,800.00 and $11,429.00.

While the foregoing computation is the correct method of reaching lost profits, it does not grant to appellee his total damages. By way of damages, he lost his actual expenses plus his profit; not only his actual expenses of $9,023.00 but also his profit of $10,371.00 for a total of $19,394.00! He should have had judgment for $19,394.00. In other words, the court only gave him lost profits of $1,348.00—the difference between $9,023.00 and $10,371.00. The production would have been 5,600 bushels (40 × 140 = 5,600). Under the judgment the award is $1,348 ÷ 5,600 = 24¢ per bushel net profit! His net profit should have been $10,371.00 ÷ 5,600 resulting in $1.85 per bushel. The lost profits are only one element of appellee's damages; his actual expenses are another. The trial court took out appellee's expenses twice, once by not reimbursing them and again by not giving him the value of the crop he would have had in the market.

McCormick on Damages (1935), pp. 487–488, explains this process of ascertaining damages arising from a lost crop:

" * * * Accordingly, the decisions usually sanction the practice of admitting proof, where the growing crop is destroyed, of the probable yield and value of the crop, when finally harvested and marketed at maturity, and of the cost of the further care and cultivation, harvesting, and marketing, as evidence of the actual realizable value of the growing crop when destroyed. It is a short step from this to say directly, as many cases do, that the measure of damages is what the crop when harvested would finally have brought, less the *prospective* cost of cultivation, harvesting, and marketing. While the distinction between the two formulas seems of slight intrinsic importance, the instructions must be framed according to the form locally preferred. The more direct doctrine, allowing as damages the *prospective* net proceeds, is perhaps less likely to invite difficulties over the question of whether there is a market value or disputes over the kind of evidence which will be admitted to show value. * * * " (Emphasis added and footnotes omitted.)

This court has held that the measure of damages for breach of contract is that which would put the plaintiff in the same position as he would have been in had the contract been performed, less proper deductions; in other words, it is that which will compensate him for the loss which performance would have prevented or breach of it has entailed. *Reynolds v. Tice*, Wyo., 595 P.2d 1318 (1979); *Zitterkopf v. Roussalis*, Wyo., 546 P.2d 436 (1976). A person should receive compensation commensurate with his loss. *Rocky Mountain Packing Co. v. Branney*, Wyo., 393 P.2d 131 (1964). These rulings are consistent with § 34–21–294, W.S.1977 (§ 2–715, U.C.C.). See, *R. E. B., Inc. v. Ralston Purina Co.*, 525 F.2d 749 (10th Cir. 1975), which would allow expenses and lost profits under § 34–21–294, W.S.1977 (§ 2–715, U.C.C.).

I have some difficulty understanding why appellee did not cross-appeal. He apparently is satisfied with a $1,348.00 profit. Anyway, if that is all he wants, I would have affirmed the district court in all respects.

## II

However that may be, I just cannot understand the majority sending the appellee away empty handed and am appalled by such harshness. It is in complete discord with basic justice. It finds the trial judge was correct in finding there was a breach of warranty and then deprives appellee of damages proven and found.

Rule 52(a), W.R.C.P.:

**2.** Appellee entered into an agreement with a neighbor to pasture his cattle on the aborted wheat leaves for that amount.

"(a) *General and special findings by court.* Upon the trial of questions of fact by the court, or with an advisory jury, it shall not be necessary for the court to state its findings, except generally for the plaintiff or defendant, unless one of the parties requests it before the introduction of any evidence, with the view of excepting to the decision of the court upon the questions of law involved in the trial, in which case the court shall state in writing its special findings of fact separately from its conclusions of law; provided, that without such request the court may make such special findings of fact and conclusions of law as it deems proper and if the same are preserved in the record either by stenographic report or by the court's written memorandum, the same may be considered on appeal. Requests for findings are not necessary for purposes of review. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court."

This is similar to Rule 52(a), F.R.C.P.[3]

The appellee as plaintiff in his complaint prayed for the cost of raising the crop and his lost profits. The court in its judgment made findings of fact:

" * * * [T]he court finds generally for the Plaintiff and against the Defendant on the complaint of the Plaintiff and further makes the following findings: That the Defendant did not deliver to the Plaintiff spring wheat as ordered by the Plaintiff and as represented on the delivery ticket issued by the Defendant's agent to the Plaintiff, but delivered winter wheat; that the winter wheat delivered to Plaintiff by Defendant did not produce a crop of wheat; that as a result Plaintiff lost the profit he would have otherwise made from said crop in the sum of $10,371.00, computed as follows: A potential gross return of Forty (40) bushels per acre on One Hundred Forty (140) acres, each bushel having a dollar value of Four Dollars ($4.00) for a total of Twenty-Two Thousand Four Hundred Dollars ($22,400.00) from which should be subtracted the following expenses incurred by Plaintiff in connection with the crop: Eight Hundred Sixty-Six Dollars ($866.00) for seed grain, Nine Thousand Twenty-Three Dollars ($9,023.00) for electric power to operate the sprinkler system and water well, land preparation, planting, fertilizing and post emergent herbicide spraying, and One Thousand Five Hundred Forty Dollars ($1,540.00) for harvesting; All of said figures are taken from Plaintiff's Exhibit 1, using the higher figure therein given for the operations performed by the Plaintiff which figures the court finds to be the reasonable cost of said operations; The further sum of Six Hundred Dollars ($600.00) should also be deducted as the sum received by Plaintiff for use of the vegetation actually produced as cattle grazing; that the counterclaim of Defendant should be dismissed.

"IT IS THEREFORE ORDERED, adjudged and decreed that the Plaintiff have and recover from the Defendant the sum of Ten Thousand Three Hundred Seventy-One and 00/100 Dollars ($10,371.00) together with his costs incurred herein, taxed at $25.00."

3.  Rule 52(a), F.R.C.P.:

    "(a) *Effect.* In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b)."

Rule 1.04, W.R.A.P. provides that "[a] judgment rendered or final order made by a district court may be reversed in whole or in part, vacated or *modified* by the Supreme Court for errors appearing on the record." (Emphasis added.) It is well settled that the judgment of a district court may be affirmed on any legal ground appearing in the record. *Wyoming Public Service Commission v. Hopkins*, Wyo., 602 P.2d 374 (1979).

A trial court's findings of fact form the basis of its conclusions, and a judgment must therefore find a basis in the trial court's findings. *State Highway Commission v. Garton and Garton, Inc.*, Wyo., 418 P.2d 15 (1966). As said in *United States v. Forness*, 125 F.2d 928 (2nd Cir. 1942), cert. denied 316 U.S. 694, 62 S.Ct. 1293, 86 L.Ed. 1764, cited with approval by the Federal Advisory Committee on the Civil Rules and 5A Moores Federal Practice, § 52.06[1]:

> " * * * The correct finding, as near as may be, of the facts of a law suit is fully as important as the application of the correct legal rules to the facts as found. An impeccably 'right' legal rule applied to the 'wrong' facts yields a decision which is as faulty as one which results from the application of the 'wrong' legal rule to the 'right' facts. The latter type of error, indeed, can be corrected on appeal. * * * " 125 F.2d at 942.

The trial judge made findings of fact which are supported by the evidence and consistent with the appellee's complaint wherein he prayed for his expenses of raising a crop:

> " * * * $9,200.00 as the cost paid by Plaintiff of land preparation, irrigation and spraying."

as well as:

> "3. For the sum of $24,400.00 as lost profit."

The evidence and the trial judge's findings fully support a recovery of expenses *and* lost profits.

I would have affirmed.