IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CRAIG FROST, REBECCA FROST and AIR CHARTER PROFESSIONALS, INC., | ) ) ) ) | No. 31328-0-III |
| Respondents, | ) ) | |
| v. | ) ) | |
| MARK H. BROOKS, JANE DOE BROOKS and JOHN and JANE DOE 1-10, | ) ) ) | UNPUBLISHED OPINION |
| Petitioners. | ) ) | |

SIDDOWAY, C.J. — We granted discretionary review of this interlocutory challenge by Mark Brooks, a resident of Arizona, to an order of default obtained against him by Craig and Rebecca Frost and Air Charter Professionals Inc. While Mr. Brooks raises several challenges to the order of default, we find that the absence of minimum contacts with Washington State to support personal jurisdiction is dispositive. This intriguing dispute will have to be resolved in a forum having jurisdiction over Mr. Brooks. We reverse the order of default and remand with directions to dismiss the complaint.

FACTS AND PROCEDURAL BACKGROUND

In January 2012, Craig Frost used a forum on the Internet to advertise a rare, custom built motorcycle for sale.[1] In response to the advertisement, Mark Brooks telephoned Mr. Frost, whose telephone number includes an area code assigned to the state of Florida, but who claims he was in Spokane at the time. Mr. Brooks offered to purchase the motorcycle for $160,000. Mr. Frost agreed to a sale at that price and to transport the motorcycle to Arizona, where Mr. Brooks lives and where Mr. Frost also owns a home.

Mr. Frost promptly traveled to Arizona with the motorcycle. Shortly after Mr. Frost arrived at his home in Lake Havasu City, Mr. Brooks came to the Frost home with a companion and asked to take the motorcycle for a test drive. About 10 minutes after Mr. Brooks took off for the test drive, his companion—who had stayed at the home with Mr. Frost—received a call from Mr. Brooks, who asked his companion to let Mr. Frost know he would not be returning. According to Mr. Brooks, the motorcycle actually belonged to him. He had used his offer to purchase the motorcycle as a ruse to get it back. Mr.

---

[1] The motorcycle is known as a "Y2K Turbine," and was manufactured in Louisiana by Marine Turbine Technologies LLC (MTT) in 2004. The Y2K Turbine is apparently very rare—MTT has manufactured less than 20 of them over the past 12 years. Among other claims to fame, the motorcycle was named the most powerful in the world by Guinness World Records. For more information, *see* http://www.marineturbine.com/downloads/MTT%20Turbine%20Bike%20BROCHURE.pdf (last visited July 14, 2014).

Brooks's companion provided Mr. Frost with documents purporting to establish title to the motorcycle in Mr. Brooks's name and then left.

Mr. Brooks refused Mr. Frost's telephoned demand to pay the agreed price or return the motorcycle, so Mr. Frost called local police. He provided them with a receipt showing that he had purchased the motorcycle from Lake Cumberland Marine LLC in 2006 for $185,000. But a title search performed by the officers revealed title to be in Mr. Brooks's name.[2]

Mr. Frost; his wife, Rebecca; and their air charter business, Air Charter Professionals Inc., then commenced a lawsuit in Spokane County Superior Court against Mr. Brooks, claiming breach of contract, conversion, and fraud. Although Mr. Brooks was properly served at his home in Arizona, he failed to file an answer or file a notice of appearance within the 60 days provided by RCW 4.28.180.

---

[2] The history of the motorcycle's ownership is clouded. The record on appeal indicates that MTT first sold the motorcycle to Roger Bourget in Phoenix, Arizona, who later transferred it—without a change in title—to Lake Cumberland Marine LLC. Mr. Frost contends that he purchased the motorcycle from Lake Cumberland Marine in 2005 in exchange for flight time and training. Mr. Brooks claims that he, not Mr. Frost, purchased the motorcycle from Lake Cumberland Marine. A principal of Lake Cumberland Marine filed an affidavit in proceedings below stating that Mr. Frost failed to complete terms of the purchase and that the buyer's order Mr. Frost attached to his complaint was altered.

3

Sixty-one days after service, the Frosts[3] obtained both an order of default and a default judgment against Mr. Brooks in the amount of $160,000, plus interest, attorney fees, and costs. Five days later, Mr. Brooks filed a motion to dismiss on the grounds of lack of jurisdiction, forum non conveniens, and failure to join a necessary party under CR 19. He later filed a motion to set aside the order of default and default judgment, asserting a defense to the complaint and again objecting to personal jurisdiction. The court denied both motions as well as a motion for reconsideration. Mr. Brooks filed an appeal in December 2012.

While the appeal was pending, and in response to collection activity in the superior court, Mr. Brooks moved for an order to show cause why the court should not vacate the judgment, arguing for the first time that the default judgment had awarded the Frosts remedies of replevin and an order requiring that he transfer title, despite the fact that their complaint had not included a claim requesting that relief. The court entered the order to show cause and, after a hearing, vacated the judgment on the basis that it exceeded the relief requested in the complaint. It left the order of default in place.

After this court learned of the postappeal developments, we sought input from the parties on the status of the appeal and eventually set the case for a hearing under

---

[3] We refer to Mr. and Ms. Frost and Air Charter Professionals Inc. collectively as "the Frosts," for simplicity, and note that the trial court's original judgment was in favor of the corporation.

4

RAP 6.2(b), in order to determine whether the case remained reviewable as a matter of right, and if not, whether we should accept discretionary review. *See Meade v. Nelson*, 174 Wn. App. 740, 749 n.3, 300 P.3d 828 (an order of default is subject to discretionary review and not appealable of right), *review denied*, 178 Wn.2d 1025 (2013). Our commissioner granted discretionary review, finding it appropriate "given the issue of whether the trial court had specific personal jurisdiction of Mr. Brooks." Commissioner's Ruling, *Frost v. Brooks*, No. 31328-0-III (Wash. Ct. App. Dec. 12, 2013).

## ANALYSIS

Mr. Brooks contends that the trial court erred in refusing to vacate the order of default, both because he had substantially complied with the appearance requirement and because all of the factors identified in *White v. Holm*, 73 Wn.2d 348, 438 P.2d 581 (1968) as weighing in favor of relieving a defendant from default are met in his case. He also argues that the trial court lacked personal jurisdiction over him. We need not reach the trial court's refusal to vacate the order of default because we conclude that the trial court lacked personal jurisdiction over Mr. Brooks.

*I. The defense of lack of personal jurisdiction was not waived*

Mr. Frost contends that Mr. Brooks waived the defense of personal jurisdiction. He relies on CR 12(h)(1), which provides that "[a] defense of lack of jurisdiction over the person . . . is waived . . . if it is neither made by motion under this rule nor included in a

5

responsive pleading or an amendment thereof permitted by rule 15(a) to be made as a matter of course." Based on that language, he contends that entry of the order of default meant that there could never be a motion or answer under CR 12; hence, waiver of the jurisdiction defense was automatic upon entry of the default order.

The same argument made under substantially similar Rule 12(h) of the Federal Rules of Civil Procedure has been characterized by one circuit court as "against all federal authority." *Jackson v. FIE Corp.*, 302 F.3d 515, 523 (5th Cir. 2002). Our civil rules at issue are based on and substantially correspond to the Federal Rules of Civil Procedure, so we may look to federal cases interpreting federal discovery provisions for guidance. *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 218-19, 829 P.2d 1099 (1992). As the Fifth Circuit explained well-settled federal law:

> True, a party's right to object to personal jurisdiction certainly is waived under Rule 12(h) if such party fails to assert that objection in his first pleading or general appearance. But a party's right to contest personal jurisdiction is not waived by his failure to appear at all.

*Jackson*, 302 F.3d at 523 (footnote omitted).

The same construction applies to CR 12(h), as recognized in *Allstate Insurance Co. v. Khani*, 75 Wn. App. 317, 326-27, 877 P.2d 724 (1994):

> Where a defendant appears in a case and files responsive pleadings or engages in discovery prior to the entry of a final judgment, that defendant is subject to the requirements of CR 12(b) and (h)(1).
> In contrast, when a default judgment is entered against a defendant and is void for lack of personal jurisdiction over him, he may challenge the void default judgment at any time. A party will not be deemed to have

6

waived the right to challenge a default judgment void for lack of personal jurisdiction merely because time has passed since the judgment was entered. Under such circumstances, the trial court *must* vacate that judgment and has no discretion to do otherwise.

(Citation omitted.) *See also In re Marriage of Markowski*, 50 Wn. App. 633, 636, 749 P.2d 754 (1988) ("[A] default judgment entered without proper jurisdiction is void."); CR 60(b)(5) (authorizing courts to relieve a party from a judgment on the grounds that the judgment is void).

The defense of the court's lack of personal jurisdiction was not waived.

## II. *The trial court lacked personal jurisdiction*

Personal jurisdiction over a nonresident defendant may be general or specific. General jurisdiction over a nonresident defendant exists when the defendant's actions in the state are so substantial and continuous that justice allows the exercise of jurisdiction even for claims not arising from the defendant's contacts within the state. *Raymond v. Robinson*, 104 Wn. App. 627, 633, 15 P.3d 697 (2001) (citing *Precision Lab. Plastics, Inc. v. Micro Test, Inc.*, 96 Wn. App. 721, 725, 981 P.2d 454 (1999)). No argument is made that Mr. Brooks has contacts with Washington that would support general jurisdiction.

Specific jurisdiction over a nonresident defendant may exist where a defendant has "purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). The "minimum

contacts" requirement flows from the due process clause of the Fourteenth Amendment to the United States Constitution, which protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he or she has established no meaningful contacts, ties, or relations. *Id.* at 471-72. The Washington Legislature has prescribed the scope of specific jurisdiction that it authorizes Washington courts to assert in its long-arm statute, RCW 4.28.185(1), which provides that an out-of-state defendant subjects itself to personal jurisdiction in the State by engaging in any of the following acts:

> (a) The transaction of any business within this state;
> (b) The commission of a tortious act within this state;
> (c) The ownership, use, or possession of any property whether real or personal situated in this state.

The statute has been construed to permit Washington courts to assert jurisdiction over nonresidents to the extent permitted by the due process clause of the United States Constitution, except as limited by the terms of the statute. *Deutsch v. W. Coast Mach. Co.*, 80 Wn.2d 707, 711, 497 P.2d 1311 (1972).

Mr. Frost argued below and argues on appeal that "specific personal jurisdiction exists over Brooks based upon his contacts with Craig Frost over the motorcycle." Br. of Resp't at 34. He points to the fact that Mr. Brooks saw the online advertisement and contacted Mr. Frost, who "was located in the State of Washington at the time of the contact as was the motorcycle." *Id.* He argues that the two men "contracted for the sale

of the motorcycle while Mr. Frost was in Washington," and that following their conversation, Mr. Frost registered the motorcycle in Washington before transporting it to Arizona. *Id.* at 34-35. Several of Mr. Frost's allegations of his dealings from Washington and Mr. Brooks's awareness of events taking place in Washington are disputed by Mr. Brooks.

The plaintiff bears the burden of establishing personal jurisdiction. *Byron Nelson Co. v. Orchard Mgmt. Corp.*, 95 Wn. App. 462, 465, 975 P.2d 555 (1999). Where facts bearing on personal jurisdiction are in dispute, we review the trial court's findings of fact for substantial evidence. *Harvey v. Obermeit*, 163 Wn. App. 311, 261 P.3d 671 (2011). The absence of a finding of fact on a disputed issue in favor of the party with the burden of proof is the equivalent of a finding against that party on that issue. *State v. Haydel*, 122 Wn. App. 365, 373, 95 P.3d 760 (2004). Accordingly, we treat the findings of fact as the only material disputed facts that the trial court found both supported personal jurisdiction and were supported by the evidence.

The court made two findings in support of its conclusion that it had personal jurisdiction over Mr. Brooks:

> 1.13    Plaintiff Frost, in uncontradicted testimony, has established that he is a Spokane County resident and has owned and possessed the subject motorcycle in the State of Washington for six years.
> 1.14    Plaintiff Frost has testified phone contacts and testimony [sic] regarding the sale and purchase of this motorcycle took place while he was physically in Spokane.

Clerk's Papers (CP) at 191-92.

We review de novo whether the trial court's findings of a nonresident defendant's contacts with the state support its conclusion of law that personal jurisdiction exists. *See Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003) (conclusions of law are reviewed de novo).

We begin by addressing two of Mr. Frost's claims that are torts: conversion and fraud. Whether they subject Mr. Brooks to jurisdiction for the "commission of a tortious act within this state" is readily resolved. Jurisdiction under RCW 4.28.185(1)(b) has been construed to depend upon whether the "last event necessary to make the defendant liable" occurred in Washington State. *MBM Fisheries, Inc. v. Bollinger Mach. Shop & Shipyard, Inc.*, 60 Wn. App. 414, 425, 804 P.2d 627 (1991). Here, the last event giving rise to Mr. Frost's claims occurred in Arizona, where Mr. Brooks took the motorcycle for a test drive and never returned.[4] The superior court did not have personal jurisdiction over Mr. Brooks based on the "commission of a tort" provision of the long-arm statute.

Mr. Frost must rely, then, on the long-arm statute's provision that Washington courts have jurisdiction over the "transaction of any business within this state." RCW

---

[4] For purposes of determining jurisdiction under the long-arm statute, we do not consider evidentiary support for the merits of the plaintiff's claims for relief. Whether a tortious act was actually committed must be determined by trier of fact. For this purpose alone, a court must treat the allegations in the complaint as established. *Lewis v. Bours*, 119 Wn.2d 667, 670, 835 P.2d 221 (1992).

10

4.28.185(1)(a). The factual scenario of a seller in one state who advertises on the Internet, receives an order or agreement to buy from a buyer in another state, and then delivers the purchased goods to the buyer in the buyer's home state is an increasingly common one. Well settled principles compel the conclusion that without more, a nonresident buyer's isolated acceptance of an offer directed to him in his home state cannot subject him or her to the jurisdiction of Washington courts.

In *Tyee Construction Co. v. Dulien Steel Products, Inc.*, 62 Wn.2d 106, 115-16, 381 P.2d 245 (1963), our Supreme Court set out three criteria that should be applied in viewing the facts of a case where personal jurisdiction is challenged against the rights of a nonresident:

> (1) The nonresident defendant . . . must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

(Footnotes omitted.) The first two criteria reflect provisions of the long-arm statute,[5] while the third is an attempt to clarify the factual considerations bearing on the

---

[5] Specifically, "[c]riterion (1) is a capsulized statement of the statutory requirements set out in RCW 4.28.185(1)(a) and (b)," while "[c]riterion (2) expresses the limitation set out in RCW 4.28.185(1) and (3)." *Callahan v. Keystone Fireworks Mfg. Co.*, 72 Wn.2d 823, 835, 435 P.2d 626 (1967).

11

nonresident defendant's right to due process. *Callahan v. Keystone Fireworks Mfg. Co.*, 72 Wn.2d 823, 835, 435 P.2d 626 (1967).

The first requirement for "transacting business" jurisdiction is that the defendant purposefully do some act or consummate some transaction in the forum state. A number of cases have dealt with nonresident buyers, which, according to Professor Tegland, "have proved to be more troublesome than case[s] involving nonresident sellers." 14 KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 4:8, at 74 (2d ed. 2009). Tegland makes the following observations about the cases:

> If a nonresident buyer (having no other contacts with Washington) transmits an order to a Washington firm by mail, delivery to be made in the state of the buyer's residence, and thereafter the buyer fails to pay for the goods, the buyer should perhaps not be held to have submitted himself or herself to the jurisdiction of the Washington courts for the purposes of an action for the purchase price.
>     Some Washington cases have found long-arm jurisdiction over nonresident buyers when there has been a series of purchases. In one case, the court relied heavily upon the fact that the buyer had taken the initiative in soliciting the seller-buyer relationship. In a subsequent case, however, the court found jurisdiction through the nonresident defendant buyer's purposeful availment of the benefit and protection of Washington laws, despite the fact that the nonresident did not initiate the buyer-seller relationship. Still later, another opinion reinforced the latter view. In some cases, however, the courts have refused to find jurisdiction when the buyer's contacts with Washington were insignificant.

*Id.* at 74-75 (footnotes omitted).

The last reference to cases where "the buyer's contacts with Washington were insignificant" is to this court's decision in *Washington Equipment Manufacturing Co. v.*

*Concrete Placing Co.*, 85 Wn. App. 240, 931 P.2d 170 (1997). In *Concrete Placing*, this court observed that the purposeful availment standard "is not a mechanical standard" and that "[w]e consider the quality and nature of the *defendant's* activities." 85 Wn. App. at 246 (emphasis added). We noted that whether a contracting party has purposefully availed itself of the benefits of this state frequently turns on which party solicited the agreement and where. In *Concrete Placing*, the Idaho defendant had several contacts with Washington during the course of a business transaction including several telephone calls, arranging for delivery "'F.O.B.'" Spokane, and having several of its employees visit a Spokane plant to inspect its manufacturing process and arrange shipment. *Id.* at 247.

Here, Mr. Brooks made a telephone call in response to a solicitation directed to him and other online forum viewers by Mr. Frost. The call was made to Mr. Frost's Florida-based telephone number although the court found that Mr. Frost was in Spokane at the time he received the call. Although the trial court found that telephone "contacts" (plural) were made with Mr. Frost located in Spokane, such contacts still fall short of defense contacts we found insufficient in *Concrete Placing*. And the court's finding that Mr. Frost had possessed the motorcycle in Spokane for six years does not factor into the analysis: The court's focus "is on the acts of the defendant, not the plaintiff." *Byron*, 95 Wn. App. at 465. Mr. Brooks did not purposefully avail himself of the benefits and protections of Washington law.

13

The second requirement for "transacting business" jurisdiction is that the cause of action arise from, or be connected with, the defendant's act or transaction in Washington. Because Washington courts apply a "but for" test and the alleged theft of the motorcycle would not have occurred "but for" Mr. Brooks's call and agreement to purchase the motorcycle, this criterion is met in this case. *See Raymond*, 104 Wn. App. at 640 ("The 'but for' test preserves the requirement that there be some nexus between the cause of action and the defendant's activities in the forum.").

The third and final requirement is that the exercise of jurisdiction must not offend traditional notions of fair play and substantial justice. This requires consideration of "the quality, nature and extent of the defendant's activity in Washington," *DiBernardo-Wallace v. Gullo*, 34 Wn. App. 362, 366, 661 P.2d 991 (1983), as well as "the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the parties, and the 'basic equities' of the situation." *Sorb Oil Corp. v. Batalla Corp.*, 32 Wn. App. 296, 301, 647 P.2d 514 (1982).

Applying this analysis, this court in *DiBernardo-Wallace* refused to find jurisdiction where "[t]he allegedly fraudulent transaction was a single, isolated incident with an effect in Washington only because [the plaintiff] had chosen to reside in this state." 34 Wn. App. at 366. The court noted that the "foreseeability" of an effect in Washington has never been sufficient to establish minimum contacts, nor has "the unilateral activity of the plaintiff who claims some relationship with the nonresident

14

defendants." *Id.*; *see also Quad Metals Corp. v. El Capitan Mercury Co.*, 8 Wn. App. 435, 506 P.2d 1332 (1973) (holding that it would offend fair play and substantial justice to find jurisdiction where the only acts taking place in Washington were the telephone conversations between California and Washington, the approval of a lease, and the subsequent claimed out-of-state losses which affected its Washington bank accounts).

Here, Mr. Frost advertised the motorcycle on a forum that reached residents of Arizona, delivered the motorcycle to Arizona, met the buyer to deliver the motorcycle in Arizona, and suffered the alleged theft in Arizona. Mr. Brooks's contact with Washington was limited to telephone calls placed to and perhaps received from Washington. It would offend traditional notions of fair play and substantial justice to find jurisdiction over Mr. Brooks based on this isolated transaction initiated by Mr. Frost.

### III. Attorney fees

Both parties request attorney fees.

Mr. Frost requests attorney fees under RAP 18.1, RCW 4.84.010, and RCW 4.84.185. We have jurisdiction to award costs, including attorney fees, even where we determine that Washington courts lack personal jurisdiction over a party, as long as a statute authorizes the award. *Kalich v. Clark*, 152 Wn. App. 544, 550, 215 P.3d 1049 (2009). Here, however, no statute does. RAP 18.1 permits recovery of reasonable attorney fees or expenses on review if applicable law grants that right. RCW 4.84.010 governs costs to the prevailing party and provides for statutory attorney fees. RCW

15

4.84.185 allows the prevailing party to recover attorney fees from the nonprevailing party for frivolous actions. Mr. Frost is not the prevailing party.

Mr. Brooks does not devote a section of his brief to attorney fees but does ask, in the conclusion of his brief, that the court award fees and costs pursuant to RAP 14.2. The rule deals only with costs, which we award. Fees are denied. *See* RAP 18.1(b) (providing that a party requesting attorney fees "must devote a section of its opening brief to the request").

We reverse the order of default and remand with directions to the trial court to dismiss the complaint.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, C.J.

WE CONCUR:

Korsmo, J.

Fearing, J.

16